THEODORE F. LAWRENCE *et al.*

*v.*

AMINA E. SMITH *et al.*

*Filed at Ottawa November 9, 1896.*

1. WILLS—*rule against perpetuities stated.* No interest under a will subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest.

2. SAME—*possibility of event happening within rule against perpetuities controls.* If the contingent event can possibly happen beyond the limits of the rule against perpetuities, the interest conditioned on it is invalid, as being too remote, although such event will probably happen within the rule.

3. SAME—*instance of a bequest which creates a perpetuity.* A bequest to trustees of the bulk of an estate in trust, to convert into cash and pay from the proceeds and accumulations a sum, yearly, to each of three daughters during life, and after her death to pay each of her children an annual sum till twenty-five years old, at which age each such grandchild was to be paid $10,000, after which the residue was to be divided among all the testator's grandchildren then living, equally, is invalid, as creating a perpetuity.

4. SAME—*bequest to class is defeated by possibility that some may be born too late.* A gift to a class, dependent as to amount upon the number which will compose the class when the gift takes effect, is invalid where the possibility exists that some coming within the class may be born too late to take under the bequest.

5. SAME—*when valid bequests must fall with invalid ones.* Bequests of a will valid in themselves will be rejected with the invalid ones where the retention of them would defeat the testator's wishes as evidenced by the general scheme adopted, or where manifest injustice would result to beneficiaries.

6. SAME—*when part will stand though other parts are invalid.* Those parts of a will which are valid will be sustained, though other parts are rejected as invalid, where no violence is thereby done to the intention of the testator.

7. SAME—*effect of invalid trust in will—payment of legacies in course of administration.* Specific legacies provided to be presently paid by trustees, and requiring no trust for their payment, will be upheld and paid in course of administration, notwithstanding a trust created by the will, out of which they and other legacies were to have been paid, is rejected under the rule against perpetuities.

8. SAME—*effect where rule against perpetuities excludes some members of a class.* Where the rule against perpetuities would exclude some members of a class which the testator intended should share equally, the provision is invalid as to the whole class, particularly if those excluded thereby lose all participation under the will.

9. SAME—*how far mere expression of intention to disinherit is effective.* The expression in a will of an intention to disinherit an heir is not effective unless the will gives the estate to some one else.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

Appellees, the children and heirs-at-law of Alonzo C. Wood, deceased, filed their bill in equity in the circuit court of Cook county to set aside as null and void the last will of said Wood, on the ground that in all its substantial provisions it violated the rule against perpetuities. The circuit court, upon a hearing upon bill, cross-bill, answers and replications, granted the prayer of the bill and entered a decree declaring the will void, except as to the sixth and seventh clauses and the provision nominating executors. The trustees appointed by the will, who were the same persons named as executors, took this appeal.

The will is as follows:

"*In the Name of God, Amen.*—I, Alonzo C. Wood, of the city of Chicago, county of Cook and State of Illinois, being of sound mind and memory, do make, publish and declare this to be my last will and testament, in the words and figures following, to-wit:

"My father and mother are both dead. I am a widower, my last wife, Louisa H. Wood, having died some years ago. I was born in Canada, but have been resident of Chicago since 1834.

"*First*—I make, constitute and appoint Theodore F. Lawrence and Samuel Baxter Foster, both of the city of Chicago, the executors of this my last will and testament and trustees of my entire estate of whatever kind, and the survivor of them, or their appointed successors, to

have and to hold the same upon the trusts and subject to the conditions' and limitations hereinafter mentioned.

"*Second*—I hereby waive, as I have a right to do under the statute in such case made and provided, the giving of any bonds or security by my said executors and trustees. I trust the management of my estate to my executors and trustees, knowing that as they have been true friends of mine in life, so they will be when I am dead, and I know that my wishes will be fully carried out. It is my wish that my executors and trustees shall only be held accountable for whatever they receive, and not be charged with any loss, unless it happens by their careless neglect or faulty inattention. And I will and direct that they shall be paid for the execution of this trust reasonable fees and compensation, together with all costs and expenses which are incurred in carrying out the provisions of this will.

"*Third*—I direct that in case of the death, inability or refusal to act of both of the foregoing executors and trustees, that the chief justice of the Superior Court of Cook county shall appoint two executors and trustees as soon as convenient after said death, inability or refusal to act of both of said executors and trustees, which appointment shall be made in writing, and be approved in writing by the judge of the probate court of Cook county, Illinois.

"*Fourth*—I give and bequeath unto my said executors and trustees all of my property and estate of whatever name or nature, real, personal or mixed, and wherever situated, in trust nevertheless, that is to say, upon the following trusts and conditions, to-wit: To sell and dispose of all of my said property and estate, and convert the same into cash, at such time or times and upon such terms and conditions as to my said executors and trustees shall seem meet, and to make, execute and deliver all deeds of conveyance and other kinds of instruments in writing as may be deemed necessary and proper for

that purpose; to invest and re-invest all or any of my property aforesaid, and to do all things in and about the management of my estate in the same manner as I might do if living and as shall seem expedient and just to them to enable them to carry out the purposes and intent of this my last will and testament.

"*Fifth*—I direct my said executors and trustees to pay all my just debts and funeral expenses within a reasonable time after my decease.

"*Sixth*—I ask that I may be buried by the side of Amelia Wood in Graceland Cemetery, Chicago, in the lot owned by me.

"*Seventh*—The books, pictures, furniture, clothing and jewelry belonging to me I give and bequeath to my daughters, Amina Smith, Julia De Haven Jones and Harriet Furber, to be divided by themselves.

"*Eighth*—I hereby authorize and empower my said trustees to set apart so much of my estate or invest such a sum of money as they may in their judgment think necessary and proper, and to pay from the income thereof all costs and charges and expenses arising in the course of the execution and administration of this will and its trusts.

"*Ninth*—I direct my said trustees to pay from the principal trust estate herein created, as soon after my decease as convenient, the sum of $500 in cash to my brother, Samuel Wood, now living in the State of Kansas.

"*Tenth*—I direct my said trustees to pay from the principal trust estate herein created, as soon after my decease as convenient, the sum of $500 in cash to my sister-in-law Mrs. Franklin Wood, widow of my brother Franklin Wood. She is now a resident of Granby, province of Quebec, Canada.

"*Eleventh*—I direct my said trustees to pay from the principal trust estate herein created, as soon after my decease as convenient, the sum of $500 in cash to my sister-in-law Mrs. Philip Wood, widow of my brother Philip

Wood.   She is now a resident of Knowlton, province of
Quebec, in Canada.

"*Twelfth*—I direct my said trustees to pay from the
income of the principal of the trust estate herein created,
an annuity of $600 to my daughter Amina E. Smith, wife
of Joshua Smith, Chicago, during her natural life.   In
the event of the death of my said daughter I direct my
said trustees to discontinue the annuity of $600 given her
above, and in that case, or in the event of the death of
my said daughter before my decease, to pay to each of
the children of my said daughter Amina E. Smith then
living at the time of her death, the sum of $300 each year
until they arrive at the age of twenty-five years, at which
time I direct my said trustees, from the principal of the
trust estate herein created, to pay over and deliver to
each of the said children of my said daughter when he
or she shall arrive at the age of twenty-five years the
sum of $10,000, discharged of all trusts.   If at the time of
the death of my said daughter either or any of her said
children are of the age of twenty-five years, then in that
event the said $10,000 shall be paid by the said trustees
to each of the said children so being of the age of twenty-
five years, instead of the annuity of $300 above men-
tioned.

"*Thirteenth*—I direct my said trustees to pay from the
income of the principal of the trust estate herein created
an annuity of $600 to my daughter Julia M. Jones, widow
of Charles DeHaven Jones, during her natural life.   In
the event of the death of my said daughter I direct my
said trustees to discontinue the annuity of $600 given her
above, and in that case, or in the event of the death of
my daughter aforesaid before my decease, to pay to each
of her children then living at the time of her death the
sum of $300 each year until they arrive at the age of
twenty-five years, at which time I direct my said trustees,
from the principal of the trust estate herein created, to
pay over and deliver to each of the said children when

they arrive at the age of twenty-five years of age the sum of $10,000, discharged of all trusts. If at the time of the death of my said daughter either or any of her said children are of the age of twenty-five years, then in that event the said $10,000 shall be paid by the said trustees to each of the said children so being of the age of twenty-five years, instead of the annuity aforesaid.

"*Fourteenth*—I direct my said trustees to pay from the income of the principal trust estate herein created an annuity of $600 to my daughter Harriet C. Furber, wife of William Furber, of Chicago, during her natural life. In the event of the death of my said daughter I direct my said trustees to discontinue the annuity of $600 given to her above, and to pay to each of the children of my said daughter then living at the time of her death the sum of $300 each year until they arrive at the age of twenty-five years, at which time I direct my said trustees, from the principal of the trust estate herein created, to pay over and deliver to each of the said children of my said daughter when he or she shall arrive at the age of twenty-five years the sum of $10,000, discharged of all trusts. If at the time of the death of my said daughter either or any of her said children are of the age of twenty-five years, then in that event the said $10,000 shall be paid by the said trustees to each of the said children so living of the age of twenty-five years, instead of the annuity of $300 above mentioned.

"*Fifteenth*—I direct my said trustees to pay from the income of the principal of the trust estate herein created an annuity of $600 to my son Philip S. Wood, during his natural life.

"*Sixteenth*—I direct my said trustees to pay from the income of the principal of the trust estate herein created an annuity of $600 to my son Edward C. Wood, during his natural life.

"*Seventeenth*—I direct my said trustees to pay from the income of the principal of the trust estate herein created

an annuity of $300 to my daughter Fanny Wood, (also sometimes known as and called Fanny Starrin,) who now resides in Troy, New York State, during her natural life.

"*Eighteenth*—I direct my said trustees to pay over and deliver the entire principal sum remaining after all the above sums are paid, with its accumulations, if any, discharged of all trusts, to my grandchildren then living, to be equally divided among them, provided the trust created by this will has terminated to all the before named beneficiaries and remainder-men. If the trust has not so terminated, then I direct my said trustees to hold said property until such termination, when I then direct them to divide the same, discharged from all trusts, among said grandchildren, as above directed.

"*Nineteenth*—I have another son by the name of Fred L. Wood, who is now confined in a penitentiary on a life sentence for the crime of murder. During his boyhood and early manhood I had given him many more advantages than I had given any of my other children, but all my love and care for him only seemed to make him more reckless and wicked. For many years previous to his arrest and conviction for murder he had repeatedly threatened me that he would take my life and that of some of his brothers and sisters, and it is my express wish and desire that he shall have nothing whatever from my estate, and I make this statement in this my last will and testament that there may be no question as to whether or not it was my intention to leave my said son anything.

"*Twentieth*—I hereby revoke any and all wills heretofore made by me.

"In witness whereof I have hereunto set my hand and subscribed my name to this my last will and testament, containing of six sheets of paper written on both sides, making twelve sides written, on this......day of July, A. D. 1890.                    ALONZO C. WOOD."

JOHN H. MULKEY, for appellants:

A gift to one not *in esse* at the time of the testator's death, limited to take effect within a gross term exceeding twenty-one years and not preceded by a life interest in the subject of the gift, is invalid, as being too remote. 1 Jarman on Wills, 513; *Palmer* v. *Halford,* 4 Russ. 403; *Speakman* v. *Speakman,* 8 Hare, 180; *Routledge* v. *Dorril,* 2 Ves. Jr. 357; *Cadell* v. *Palmer,* 1 C. & F. 372; Gray on Perpetuities, sec. 37.

A contingent executory gift to the grandchildren of the testator on their attaining a given age above twenty-one years, the parent being alive at the time of the testator's death, is void on the ground of remoteness. (*Leake* v. *Robinson,* 2 Mer. 363; *Dodd* v. *Wake,* 8 Sim. 615; Gray on Perpetuities, sec. 374.) But it is not too remote when the parent is dead at the time of the testator's death. 1 Jarman on Wills, 532, 519.

A simple gift of a specified sum of money *to each* of the grandchildren of the testator on his or her attaining a specified age exceeding twenty-one years, will be good as to those living at the testator's death, without regard to their ages, notwithstanding the parent of the children is also still alive. But such gift will be bad as to children born afterward. Gray on Perpetuities, 389; 1 Jarman on Wills, (5th Am. ed.) 532, *et seq.; Brighton* v. *James,* 1 Coll. 26; *Storrs* v. *Benbow,* 3 DeG., M. & G. 390; *Wilkinson* v. *Duncan,* 30 Beav. 111.

A will may be bad in part and good as to the residue. *Catlin* v. *Brown,* 11 Hare, 372; *Vanderplank* v. *King,* 3 id. 1; *Wilson* v. *Wilson,* 28 L. J. Ch. 95; *Knappinger* v. *Tomlinson,* 34 id. 3; *Packer* v. *Scott,* 33 Beav. 511.

DUNCAN & GILBERT, also for appellants:

A will or other instrument passing an estate may be void in part and yet good for the residue. *Kane* v. *Gott,* 24 Wend. 641; *Savage* v. *Burnham,* 17 N. Y. 561; *DeKay* v.

*Irving*, 5 Denio, 646; *Oxley* v. *Lane*, 35 N. Y. 340; *Harrison*
v. *Harrison*, 36 id. 543.

HOLDEN & BUZZELL, for appellees:

No interest subject to a condition precedent is good
unless the condition must be fulfilled, if at all, within
twenty-one years after some life in being at the creation
of the interest.  The contingency must happen, if at all,
within the required limits.  Gray on Perpetuities, secs.
201, 214; Marsden on Perpetuities, 107; Lewis on Perpe-
tuities, *464.

Where a gift is to a class which may ultimately be
composed of persons not born at the time of the testa-
tor's death, and the bequest may vest more than twenty-
one years after the end of all lives then in being, the rule
against perpetuities is violated.  Gray on Perpetuities,
secs. 369, 370, 373, 374; Marsden on Perpetuities, 107;
Lewis on Perpetuities, *464.

If by any possibility the devise may violate the rule
it is bad.  The fact that in the particular case under
consideration the rule is not violated does not relieve
from the consequences.  *Smith's Appeal*, 88 Pa. St. 495; *Don-
ohue* v. *McNichol*, 61 id. 78; *Post* v. *Rohrbach*, 142 Ill. 606.

The rule is stated in the following Illinois cases: *Post*
v. *Rohrbach*, 142 Ill. 600; *Hale* v. *Hale*, 125 id. 399; *Waldo* v.
*Cummings*, 45 id. 421; *Rhodes* v. *Rhodes*, 43 id. 239; *Schaefer*
v. *Schaefer*, 141 id. 337.

The five grandchildren alive at the testator's death do
not take independently, but as members of a class, and
the class violates the rule.  Gray on Perpetuities, sec.
369; *Blagrove* v. *Hancock*, 16 Sim. 374; *Dungannon* v. *Smith*,
12 C. & F. 583.

Where a person is to take, if he takes at all, as a sur-
vivor, his interest is not vested, but contingent.  *Temple*
v. *Scott*, 143 Ill. 297; *Cheney* v. *Teese*, 108 id. 482.

The devise in trust in this will is wholly void.  *Seaman*
v. *Wood*, 22 Beav. 591; *Boughton* v. *Boughton*, 1 H. L. Cas.

406; *Sears* v. *Putnam,* 102 Mass. 5; *Leake* v. *Robinson,* 2 Mer. 362; *Sears* v. *Russell,* 8 Gray, 86; *Deford* v. *Deford,* 36 Md. 168; *Cadwell* v. *Willis,* 57 Miss. 555; *Webster* v. *Boddington,* 26 Beav. 128; *Pickford* v. *Brown,* 2 K. & J. 426; *Hale* v. *Hale,* 3 L. R. Ch. 643; *Pearks* v. *Moseley,* 50 L. J. Ch. 57; *Porter* v. *Fox,* 6 Sim. 486; *Moore* v. *Moore,* 6 Jones' Eq. 132; *Barnum* v. *Barnum,* 26 Md. 119.

A perpetuity will no more be tolerated when it is covered by a trust than when it displays itself undisguised in the settlement of a legal estate. Perry on Trusts, sec. 382; *Norfolk's case,* 1 Vern. 164; *Humbertson* v. *Humbertson,* 1 P. Wms. 332; *Parfitt* v. *Hember,* L. R. 4 Eq. 443.

Courts of equity have rather led the courts of law in fashioning rules against perpetuities. Perry on Trusts, sec. 382, p. 350, note 3.

The provision for the payment of annuities does not affect the question. *Boughton* v. *Boughton,* 1 H. L. Cas. 406; *Irvin* v. *Wallport,* 128 Ill. 527; *DeHaven* v. *Sherman,* 131 id. 115; *Sears* v. *Putnam,* 102 Mass. 5.

The bequests to the grandchildren in the twelfth, thirteenth and fourteenth clauses of the will are bequests to a "class." Anderson's Law Dic. vide "Class;" *Greenwood* v. *Roberts,* 15 Beav. 97; *Jackson* v. *Roberts,* 14 Gray, 550; *Barber* v. *Barber,* 3 M. & C. 697; *Mebane* v. *Womack,* 2 Jones' Eq. 301; *Schaffer* v. *Kettell,* 14 Allen, 530; *Bain* v. *Lescher,* 11 Sim. 399; *Schaefer* v. *Schaefer,* 141 Ill. 339.

The whole devise to the trustees must fall because the material parts of it violate the rule. The trust cannot be maintained to support minor bequests which are a part of the general scheme. *Coster* v. *Lorillard,* 14 Wend. 265; *Barnum* v. *Barnum,* 26 Md. 119; *Will of Butterfield,* 133 N. Y. 475; *Knox* v. *Jones,* 47 id. 398; *Benedict* v. *Webb,* 98 id. 460; *St. Amour* v. *Rivard,* 2 Mich. 302; *McSorley* v. *McSorley,* 4 Sandf. Ch. 416; *Tilden* v. *Green,* 130 N. Y. 50; *Amory* v. *Lord,* 9 id. 410.

Mr. JUSTICE CARTER delivered the opinion of the court:

Able and exhaustive arguments have been made by counsel on both sides of this case, and so directed that, with the opinion of the learned chancellor who heard the case in the court below, we have been relieved of much labor that would otherwise have been imposed upon us. Separate briefs have been filed by the several counsel for appellants, in all of which it is conceded, and which appears plain, that the will, in some of its provisions, violates the rule against perpetuities, though counsel differ somewhat as to which one or more of the provisions is or are affected with that vice, and also as to some of the essential grounds upon which a correct conclusion must be based.

The questions raised are questions of law, the facts being brief and undisputed. The testator died March 18, 1892, owning real and personal property in Cook county valued at about $90,000. He left seven children, all mentioned in the will, viz., Amina E. Smith, Julia M. Jones, Harriet C. Furber, Philip S. Wood, Edward C. Wood, Frederick L. Wood and Frances S. Wood, sometimes called Fannie Starrin, the first five of whom were of the respective ages of fifty-three, fifty-two, forty-nine, forty-five and forty-one years. The last two, being children of the testator's second wife, were younger, but of mature age. He left him surviving also five grandchildren, viz., Amina E. Smith, Jr., and Jessie Smith, daughters of Amina E. Smith, and of the respective ages of twenty-four and twenty-one years; Alonzo DeHaven Jones and Gertrude M. Jones, children of Julia M. Jones, and of the respective ages of seventeen and fifteen years; and Theodosia Furber, daughter of Harriet C. Furber, and of the age of nine years. The children of the testator, except the first three above named, were unmarried.

The contention of the complainants below, appellees here, briefly stated, is; That the twelfth, thirteenth, four-

teenth and eighteenth clauses of the will violate the rule against perpetuities, because the legacies there provided to be paid by the trustees to the grandchildren may not vest in possession or become payable within the period of a life or lives in being and twenty-one years thereafter. It is next contended that as the entire estate is given and devised to the trustees, to be managed and administered during a period of time extending until the death of all the testator's children and until the youngest child of any one of his first named three daughters, including any that may be hereafter born, becomes twenty-five years of age, at which time the trust estate as it may then exist is to be divided among all the testator's grandchildren then living, the rule against perpetuities is clearly violated, and that such trust is therefore void, and that all provisions of the will directing the trustees to make payment of different sums out of the trust estate so created are also void. We are inclined to this view of the case in the main, and to hold that the learned chancellor of the circuit court rendered the proper decision on the final hearing, except as to divisions nine, ten and eleven of the will, which will be noticed at another place.

"No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." (Gray on Perpetuities, sec. 201; *Howe* v. *Hodge,* 152 Ill. 252.) "It is not enough that a contingent event may happen, or even that it will probably happen, within the limits of the rule against perpetuities. If it can possibly happen beyond those limits an interest conditioned on it is too remote." (Gray on Perpetuities, sec. 214.) The eighteenth or residuary clause of the will provides that the entire principal sum remaining, with its accumulations, after all the previously mentioned sums are paid and after all the trusts created by the will in favor of the "beneficiaries and remainder-men" have terminated,

shall be equally divided among all the testator's grand-children then living.   These previously mentioned sums, and the trusts created in favor of the beneficiaries mentioned in the will, include those provided for all children of the testator's three first mentioned daughters who may outlive their respective mothers, whether born before or after the testator's death and whether of the age of twenty-five years at their mothers' death or not, and the distribution could not, of course, be made, if the intention of the testator be carried out, until those sums payable by the will should be paid, if payable at all, and the trusts created by the will terminated.   The consequence would be that it would be quite within the range of possibility that a large part, if not the bulk, of the estate could not be distributed until after the time limited by the rule, but would then be distributed to grandchildren of the testator born after his death, who, by the terms of the will, could not receive their portion within twenty-one years after any life or lives in being at the death of the testator.   Besides, as the gifts provided for in the residuary clause are clearly gifts to a class, and as the amount each would receive would depend on the number of grandchildren then living, and as the possibility is that the class may be composed of those born too late to take under the rule, by the authorities the gift cannot take effect as to any.   Gray on Perpetuities, 369.

It is contended by appellants that the residuary clause should be so construed as to require distribution to the grandchildren living when all the valid legacies shall have been paid,—that is, when the payments shall have all been made by the trustees "that are lawfully directed to be paid,"—which, of course, would not include any payments to after-born grandchildren coming within the twelfth, thirteenth and fourteenth clauses, who were not twenty-five years old at the death of their mother.   But such was not the intention expressed by the testator in his will, and such a construction would tend to abrogate

163—11

the rule against perpetuities altogether, whereas it is the duty of courts to give it effect and not to destroy its efficacy by adverse construction. *Coggins' Appeal,* 124 Pa. 36; *Post* v. *Rohrbach,* 142 Ill. 600; *Lincoln* v. *New Castle,* 12 Ves. Jr. 235; *Vaughan* v. *Burslem,* 3 Brown's Ch. 92; *Scarsdale* v. *Curzon,* 1 Johns. & Hem. 50.

We are clearly of the opinion that the residuary clause is in violation of the rule, and is therefore void. It is admitted to be so by one of the distinguished counsel for appellants, was so held by the learned chancellor of the circuit court, and we see no escape from the same conclusion.

But it is argued with much force, that, conceding the invalidity of the eighteenth or residuary clause, and conceding, also, that in so far as the twelfth, thirteenth and fourteenth clauses undertake to make provision for any child or children of the first three mentioned daughters of the testator who may be born after his death and who may not be twenty-five years old at the death of its or their mother, those clauses are also within the rule and invalid, still, as the will must speak from the period of the testator's death and should be construed in the light of circumstances then existing, and as the only grandchildren then living were the five children above mentioned, who were the children of said three daughters, and the provision for each such child being separate and in nowise dependent on the provision made for or amount to be paid to any other child, those clauses should so far be held valid, and also the trust provisions of the will so far as they are necessary to carry them and other valid provisions of the will into effect.

Each of the twelfth, thirteenth and fourteenth clauses first directs the trustees to pay from the income of the trust estate an annuity of $600 a year to the testator's daughter therein mentioned, during her life. It next directs the payment of an annuity of $300, upon her death, to each of her children then living, under twenty-five

years of age, until that age is reached, and then, out of the principal of the trust estate, to pay such child the sum of $10,000 when he or she shall arrive at the age of twenty-five years. It next provides that each of such children as shall have arrived at the age of twenty-five years at the death of his or her mother shall be paid the said sum of $10,000. It is clear from the provisions of the will, that while the testator intended to prefer the children of his three daughters mentioned in the twelfth, thirteenth and fourteenth clauses over any other grandchildren he might have, yet he intended to make no distinction between those born before and those that might be born after his death,—that after-born grandchildren, if any, would come equally within the bounty of the testator as expressed in his will; and as no presumption can be indulged, from the evidence or otherwise, that no children would be born to these three daughters, or to either of them, after the death of the testator, and as the grandchildren now living may die before the happening of the contingency upon which they can take and others may be born who, under the will, might take, it is clearly possible that to carry out these provisions of the will the payments therein directed to be made would have to be made to grandchildren who could not take because of the rule against remoteness, for it would seem indisputable that as to any child which may hereafter be born to either of these three daughters, and who shall not have reached the age of twenty-five years at the death of his or her mother, the gift contingently made to it might not take effect in possession within a life or lives in being and twenty-one years. And as these several sums could not be accumulated and distributed by the trustees under the residuary clause because of its invalidity, there would be a failure of the most substantial provisions of the will, not because the contingency upon which the payments were to be made did not happen, but because it happened after the time limited by the rule. The possibility that

the contingencies mentioned in the twelfth, thirteenth and fourteenth clauses may not happen within the time allowed by the rule is sufficient to make them invalid under the rule. We think, also, that to declare those clauses of the will valid as to such of the children of these three daughters as were born before the testator's death, or as to them and such as may be twenty-five years old at their mother's death, and invalid as to any others, would be to make a different will from the one made by the testator, who intended equality among the members of this class of his grandchildren; and especially would this be the result when it is seen that such after-born grandchildren would be excluded altogether by the invalidity of the residuary clause. Then, again, the execution of these provisions of the will thus emasculated would be dependent upon carrying into effect the trust scheme devised by the will. But this trust itself violates the rule by making provisions for tying up the estate for a longer period than that fixed by the rule, and cannot therefore be sustained.

From a careful reading of the will set out in the statement of the case, it clearly appears that the trust created by the testator was one entire scheme, upon which the execution, in the main, of the various provisions of his will was made to depend. Aside from the books, pictures, etc., bequeathed to the aforesaid three daughters by the seventh clause of the will, (the validity of which is unquestioned,) there is no bequest made directly to any beneficiary, but directions, only, are given to the trustees to make certain payments out of the trust estate, some out of the principal, others out of the income. In *Tilden* v. *Green*, 130 N. Y. 29, it was said: "The appellants invoke the aid of the principle that where several trusts are created by a will which are independent of each other and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, the illegal trusts may be cut off and the legal

ones permitted to stand. This rule is of frequent application in the construction of wills, but it can be applied only in aid and assistance of the manifest intent of the testator, and never where it would lead to a result contrary to the will, or work injustice among the beneficiaries, or defeat the testator's scheme for the disposal of his property. The rule, as applied in all reported cases, recognizes this limitation: that when some of the trusts in a will are legal and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries, or some of them, then all the trusts must be construed together, and all must be held illegal and must fall."

We see no way by which a division of the trust created by this will can be made, and part held valid and the rest invalid, without doing violence to the intention of the testator. It is all one entire scheme, and although the trust is an instrument to effect the beneficial purpose of the testator, it is made the most prominent feature of the will.

It is said that at least as to the three payments, of $500 each, in the ninth, tenth and eleventh clauses of the will directed to be paid by the trustees to his brother and sisters-in-law soon after his decease, the trust must be sustained; but it is inconceivable that the testator would have created a trust for such a purpose, as such payments can as well be made in due course of administration of the estate in the probate court, and we think they should be so made, and that the court below erred in holding those provisions void. It is true they direct the trustees to pay these sums from the principal trust estate, but as the payments are to be made soon after the death of the testator, the trust estate might be regarded as the same as the estate in the hands of the executors. These provisions do not seem to be necessarily dependent

on the other provisions of the will held invalid, and there is nothing in them, of themselves, in violation of any rule of law. It would also seem to have been clearly the intention of the testator that these beneficiaries should have these gifts independently of any other disposition of his estate. Besides, it is a rule of construction that where effect cannot be given to the entire will, a part of the will may be sustained which conforms to the rules of law, where no violence is thereby done to the general intention of the testator. 2 Jarman on Wills, 843; *Oxley* v. *Lane,* 35 N. Y. 340.

It is contended by counsel for appellants that this principle should be extended to other clauses which have been held invalid, but we think the contrary. So far as the annuities to the testator's children are concerned, they are payable out of what will be their own estate, and as they will, under the Statute of Descents, take the principal, that will carry with it the income.

By the nineteenth clause the testator, for reasons therein given, intended to exclude his son Frederick from all interest in his estate, but as the bulk of the estate must pass, by the statute, to the heirs-at-law, and no disposition of it is made by this clause, it cannot have any effect. An heir cannot be disinherited unless the estate is given to some one else. *Coffman* v. *Coffman,* 85 Va. 459; 17 Am. St. 69; *Boisseau* v. *Aldridges,* 5 Leigh, 222; 27 Am. Dec. 590; *Doe* v. *Lanius,* 3 Ind. 441; 56 Am. Dec. 518, note; *Stephenson* v. *Doe,* 8 Blackf. 508; 46 Am. Dec. 489.

The decree of the circuit court will be reversed in so far as it holds the ninth, tenth and eleventh clauses or divisions of the will void and is in all other respects affirmed; and the cause is remanded with directions to modify the decree in accordance with the views herein expressed. Appellants will pay the costs in this court out of funds of the estate in their hands.

*Decree affirmed in part and reversed in part.*