SAXTON S. BARRETT, Plaintiff in Error, *vs.* MARY K. BARRETT *et al.* Defendants in Error.

*Opinion filed October 26, 1912.*

1. WILLS—*when illegal trusts may be cut out and legal ones left to stand.* Where a will creates several trusts which are independent of each other and each is complete in itself, but some are lawful and the others unlawful, if the unlawful trusts may be separated from the others they may be cut out of the will and the lawful trusts be allowed to stand.

2. SAME—*when the lawful trusts must fall with unlawful ones.* Where the lawful and unlawful trusts created by a will are so connected as to constitute an entire scheme for the disposition of the estate, so that the presumed wishes of the testator would be defeated if some portions were retained and others rejected, then all the trusts must be construed together and the lawful ones must fall with the unlawful.

3. SAME—*will can be sustained in part only when first gift is absolute.* The rule which permits the lawful trusts created by a will to be sustained though the unlawful trusts must be rejected, can be applied only when the first gift is an absolute gift of the estate and is made direct to the beneficiary.

4. SAME—*when a will creates only one entire trust.* A will which gives the entire estate to a trustee, to handle, invest, re-invest and collect the income, with directions to pay the income first to the testator's widow for life, then to the testator's sons for life, then to the lawful issue of such sons (if any) for life, and at the death of the latter to divide the *corpus* of the estate among the lawful issue and next of kin of the grandchildren, creates but one indivisible trust, and not separate trusts as to each class of beneficiaries.

5. SAME—*when a trust as to life estates cannot be sustained.* If the provision of a trust disposing of the *corpus* of the estate to the testator's great-grandchildren is void for remoteness and is the only provision disposing of the fee, and all the provisions of the trust are connected and present one entire and complete scheme for disposing of the estate, the trust provisions as to the life estates must fall with the provision as to the fee.

6. SAME—*what would amount to making new will for testator.* Where it is obvious, from the entire will, that the testator had in mind one complete and connected plan for disposing of his estate by creating a trust in the income for the lives of certain beneficiaries and in the *corpus* of the estate at the termination of the life estates, it would amount to making a new will for the testator for the courts to sustain the plan as to the life estates but hold that it must fail as to the fee.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. M. M. GRIDLEY, Judge, presiding.

ULLMANN, HOAG & DAVIDSON, for plaintiff in error.

JOSEPH CUMMINS, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by Saxton S. Barrett, as executor and individually, against Mary K. Barrett and the other defendants in error, in the superior court of Cook county, for a construction of the last will and testament of John R. Barrett, deceased. The defendants appeared in person or by guardian *ad litem* and answered the bill, and a replication was filed. The cause was tried without a reference, and a decree was entered holding the second and third paragraphs of the will void as in contravention of the rule against perpetuities, and that all of the property of which the testator died seized and possessed was intestate and passed under the laws of descent of the State of Illinois to the heirs of the testator, with the exception of the property given to the widow under the first paragraph of the will. From that decree the complainant

has prosecuted this writ of error, and has assigned as error the action of the trial court in holding the second and third paragraphs of the will of John R. Barrett void.

The facts are brief and are not in dispute. John R. Barrett died in Chicago on January 12, 1910, leaving him surviving his widow, Mary K. Barrett, and four sons,— George K. Barrett, Saxton S. Barrett, Roland B. Barrett and Arthur M. Barrett,—and seized and possessed of real and personal property. On the sixth day of July, 1909, he executed his last will and testament, which was admitted to probate in the probate court of Cook county on March 4, 1910, which, omitting the formal parts, is as follows:

"*First*—I give, devise and bequeath to my wife, Mary K. Barrett, all articles of personal property, such as books, furniture, pictures, watches, jewelry, wearing apparel and articles of virtu, owned by me at the time of my death, to be her sole and absolute property forever.

"*Second*—I hereby give, devise and bequeath to my trustee hereinafter named, all the rest and residue and remainder of my estate owned by me at my death, consisting principally of bonds, mortgages, notes and other evidences of indebtedness, in trust for the following purposes: To hold, handle, invest, re-invest, collect the income therefrom and to pay the said income thereof to my wife, Mary K. Barrett, during her lifetime, provided she elects to take under this my last will and relinquishes all statutory and other rights that she may be entitled to, and after the death of my said wife, Mary K. Barrett, to pay the said income to my four sons, George K. Barrett, Saxton S. Barrett, Roland B. Barrett and Arthur M. Barrett, share and share alike, during their respectives lives. Upon the death of Arthur M. Barrett the share of the income of my said estate paid him during lifetime shall be by my trustee paid to my grand-daughter, Mary Katherine Barrett, during her lifetime. Upon the death of my son George

K. Barrett the share of the income of my said estate paid
to him during his lifetime shall be by my said trustee paid
to his lawful issue, share and share alike, (except in the
case of his daughter, Mary Katherine Barrett,) for and
during their respectives lives.   Upon the death of my said
son Saxton S. Barrett the share of the income of my said
estate paid to him during his lifetime shall be by my said
trustee paid to his lawful issue, share and share alike, dur-
ing their respective lives.   And upon the death of my said
son Roland B. Barrett the share of the income of my said
estate paid him during his lifetime shall be by my said trus-
tee paid to his lawful issue, share and share alike, during
their respective lives.   If any of my said sons shall leave
no lawful issue them surviving, or in case my grand-daugh-
ter, Mary Katherine Barrett, shall not survive her uncle
Arthur M. Barrett, then I direct that the share intended for
such lawful issue and the said Mary Katherine Barrett be
by my said trustee handled and disposed of as part of my
original estate.   Upon the death of all of my sons and their
lawful issue named herein as beneficiaries under this will,
I direct my trustee to divide the residue and remainder of
my estate equally between the lawful issue and next of kin
of my said grandchildren, share and share alike, to be their
sole and absolute property forever, my intention being that
my trustee shall pay all of the income of my estate to my
wife while she lives, then to my sons while they, respec-
tively, live, and upon the death of either or all of my sons
George K., Saxton S. and Roland B., that their lawful is-
sue, if any, shall have said income *per stirpes* during life;
that upon the death of my son Arthur M. his share of
the said income shall be paid to my grand-daughter, Mary
Katherine Barrett, while she lives, and after the death of
all my sons and grandchildren my trustee shall divide my
estate equally between the lawful issue and next of kin of
my said grandchildren.

"*Third*—I desire that my trustee shall permit the interest and income from my said estate to accumulate for at least twelve months and then to pay it out in quarterly installment dividends, payable January, April, July and October 1 of each year. I direct that as any part of my estate becomes converted into money by the maturity and collection of bonds, notes of hand, etc., or in case of any additions thereto by inheritance or otherwise, the same shall be re-invested in the best possible manner, preferably through Wood, Gundy & Co. of Toronto, Ontario, in Canadian municipal bonds bearing five per cent interest per annum, payable semi-annually, and that if necessary to procure bonds bearing this interest rate a premium be paid therefor, and that bills of sale be taken, together with the opinion of a reputable attorney or attorneys as to the legality and desirability of such bonds, and that my said trustee prepare a full descriptive list, showing dates, amounts, time of maturity, rate of interest, date of interest, payment and signature of all notes, bonds, mortgages and other evidences of indebtedness, as soon as my said estate comes to his hands; that said list be revised from time to time as any changes are made by maturity and conversion of any of said securities, and that my said trustee deliver a copy of said list and revised list to all beneficiaries under this my last will, from time to time during the continuance of his duties.

"*Fourth*—It is my intention that the ($9000) nine thousand dollars in municipal and other bonds in the name of my sister, Callysta A. Barrett, together with the interest accruing thereon, be treated and considered the same as bonds held and owned entirely by me, and that she shall not receive the income therefrom so long as her present income from other sources continues.

"*Fifth*—I hereby nominate and appoint my son Saxton S. Barrett to be the executor and trustee of this my last will and testament, and I direct that he be not required

to give bond for the faithful performance of his duties as such, and in case of his death or inability to act before the termination of his trust, that the First Trust and Savings Bank of Chicago shall act as such executor and trustee."

Subsequent to the death of John R. Barrett the son George K. Barrett departed this life intestate, and his administrator and heirs have been substituted as parties defendant in his stead. Callysta A. Barrett, mentioned in the fourth paragraph of the will, who was made a party to the bill, disclaimed any interest under the will.

The parties agree that the will, in so far as it provides that upon the death of the widow, children and grandchildren of John R. Barrett the trustee shall turn over the body of the estate to the great-grandchildren of Barrett, creates a perpetuity and is void, and the only question in difference between them is upon this proposition: Conceding the portion of the will disposing of the *corpus* of the estate to be void, can the provisions of the will which provide that the trustee shall pay the income of the estate to the widow during her natural life, then to the four sons during their lives, and afterwards to the grandchildren during their lives, be sustained notwithstanding the invalidity of the provisions of the will which dispose of the body of the estate upon the death of the last surviving grandchild? The trial court was of the opinion that the provisions of the will creating said trust were so far connected as to form one complete scheme for the disposition and distribution of the testator's estate, and that the trust created by his will to effect such disposition and distribution was indivisible, and that as one principal part of the scheme for the disposition and distribution of the estate was void the entire scheme must fail, and the entire estate, so far as it was covered by paragraphs 2 and 3 of the will, must be disposed of and distributed as intestate estate.

It is plain the provisions of the will which gave the life use of the property first to the widow, then to the

sons and afterwards to the grandchildren, standing alone
and but for the subsequent provision providing the *corpus*
of the estate should be divided among the great-grand-
children of the testator, would be a valid disposition of
the use and enjoyment of the several life estates created in
the property, as those life estates would all vest within the
lifetime of the widow and the four sons and within twenty-
one years after the death of the last survivor of the four
sons.  We think it obvious, however, from the language of
the entire will, that the testator had in his mind, when he
executed his will, a plan for the disposition of all his es-
tate and not for the creation therein only of certain life
estates, and that for the courts to hold that his plan or
scheme of disposition or division must fail in so far as
he sought to dispose of the *corpus* of the estate but could
be sustained as to the life estates would be to make a new
will for the testator, which the courts are powerless to do.
The testator sought by his will to create a trust and to ap-
point a trustee, and to provide that the trustee should take
possession of his estate and handle it, pay the income to
certain beneficiaries, and then to distribute the *corpus* of
the estate to certain beneficiaries pointed out by him in the
will.  Had the testator known that one provision of the
will he was executing was void for remoteness, he would,
without doubt, have executed a different will.

The principle is well established that where several
trusts are created by will which are independent of each
other and each is complete within itself, some of which
are lawful and others are unlawful, and which may be sep-
arated from each other, the illegal trusts may be cut out
of the will and the legal ones permitted to stand.  There
is, however, a well recognized limitation in all the reported
cases and by the text writers upon this rule which is equally
well established with the rule, which is, that when some of
the trusts in the will are legal and some are illegal, if they
are so connected together as to constitute an entire scheme

for the disposition of the estate, so that the presumed wishes of the testator would be defeated if one portion were retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries or to some of them, then all the trusts must be construed together and all must stand or all must fall. There seems to be a further limitation upon the rule recognized by the authorities, which is, that the devise or bequest held to be legal and sustained must be direct to the beneficiary and should be sustained only when the first gift is an absolute gift of the estate. Elaborate briefs have been filed on both sides of the question here involved and numerous cases have been cited to illustrate the foregoing rule and its limitations as it has been applied by this and other courts. The rule is, however, plain, and, as we believe, never applies when its application would have the effect to make for the testator a new will.

In *Lawrence* v. *Smith,* 163 Ill. 149, the will of Alonzo C. Wood first names executors and appoints them trustees of his entire estate and bequeaths all the property to them in trust. After certain specific bequests it provides for certain annuities to heirs-at-law and gifts of $10,000, each, to certain grandchildren reaching the age of twenty-five years. After the completion of the payments of $10,000, each, to the grandchildren reaching the age of twenty-five years, the balance of the estate, with the accumulations, if any, discharged of all trusts, is divided equally among the grandchildren then living, provided the trust has terminated as to all the before-named beneficiaries and remainder-men. If the trust is not so terminated then the trustees are to hold until such termination and then make the division. The court held (1) that the provision for a trust until the death of all of the testator's children, and until the youngest grandchild, including any born after the testator's death, should become twenty-five years of age, violates the rule against perpetuities; (2) that as the gifts provided for in

the residuary clause are gifts to a class and the amount each would receive would depend on the number of grandchildren then living, and as the class may be composed of those born too late to take under the rule, the gift cannot take effect as to any; (3) that the trust itself violates the rule by making provisions for tying up the estate for a longer period than that fixed by the rule; (4) that the trust created by the testator was one entire scheme, upon which the execution, in the main, of the various provisions of his will was made to depend; (5) that aside from the books, pictures, etc., bequeathed to the daughters (the validity of which is unquestioned) no bequest is made directly to any beneficiary, but directions are only given to the trustees to make certain payments out of the trust estate, and that since the trust scheme is an entirety, the whole must be held invalid and the property intestate, except as to the specific bequest of the books, pictures, etc. The court, on page 162 of the opinion, says: "It is argued with much force that conceding the invalidity of the eighteenth or residuary clause, and conceding, also, that in so far as the twelfth, thirteenth and fourteenth clauses undertake to make provision for any child or children of the first three mentioned daughters of the testator who may be born after his death and who may not be twenty-five years old at the death of its or their mother those clauses are also within the rule and invalid, still, as the will must speak from the period of the testator's death and should be construed in the light of circumstances then existing, and as the only grandchildren then living were the five children above mentioned, who were the children of said three daughters, and the provision for each such child being separate and in nowise dependent on the provision made for or amount to be paid to any other child, those clauses should so far be held valid, and also the trust provisions of the will so far as they are necessary to carry them and other valid provisions of the will into effect. * * * Then, again, the execu-

tion of these provisions of the will thus emasculated would, be dependent upon carrying into effect the trust scheme devised by the will. But this trust itself violates the rule by making provisions for tying up the estate for a longer period than that fixed by the rule, and cannot, therefore, be sustained. From a careful reading of the will set out in the statement of the case it clearly appears that the trust created by the testator was one entire scheme, upon which the execution, in the main, of the various provisions of his will was made to depend. Aside from the books, pictures, etc., bequeathed to the aforesaid three daughters by the seventh clause of the will (the validity of which is unquestioned) there is no bequest made directly to any beneficiary, but directions, only, are given to the trustees to make certain payments out of the trust estate, some out of the principal, others out of the income. In *Tilden* v. *Green,* 130 N. Y. 29, it was said: "The appellants invoke the aid of the principle that where several trusts are created by a will which are independent of each other and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, the illegal trusts may be cut off and the legal ones permitted to stand. This rule is of frequent application in the construction of wills, but it can be applied only in aid and assistance of the manifest intent of the testator, and never where it would lead to a result contrary to the will, or work injustice among the beneficiaries, or defeat the testator's scheme for the disposal of his property. The rule, as applied in all reported cases, recognizes this limitation: that when some of the trusts in a will are legal and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries, or some of them, then all the trusts must be construed together, and all must

be held illegal and must fall.' We see no way by which a division of the trust created by this will can be made, and part held valid and the rest invalid, without doing violence to the intention of the testator. It is all one entire scheme, and although the trust is an instrument to effect the beneficial purpose of the testator, it is made the most prominent feature of the will."

In *Eldred* v. *Meek,* 183 Ill. 26, the will of Mary Brace first devises the entire estate to a trustee, and directs him, after paying funeral expenses and debts, (1) to deliver to his daughter, Ella Meek, one-fourth part of the personal estate; (2) to deliver to each of three grandsons one-fourth part of the personal estate upon their becoming, respectively, twenty-five years of age; (3) to deliver to each of said three grandsons a conveyance of certain real estate when he becomes twenty-five years of age; (4) in case of the death of Ella Meek before the death of the testator her share to go to the three grandsons upon their becoming twenty-five years of age; (5) in the case of the death of any one of the grandsons without leaving a legitimate child his share to go to the two remaining ones, in equal shares, upon their becoming twenty-five years of age; (6) in case of the death of two, leaving no legitimate children, the whole property to go to the survivor at the age of twenty-five; (7) in case of the death of any of the said grandsons before reaching twenty-five years, leaving a child or children, the grandson's share to be divided among his children when they (the great-grandchildren) become, respectively, twenty-five years of age. It was held that the interests of the said grandchildren did not immediately vest; that the will creates a perpetuity; that it is an entire scheme, and that the whole must be rejected except the provision for the payment of debts and the gift of one-fourth of the personal property to the daughter, which was held to vest. The court cites with approval *Lawrence* v. *Smith, supra, Tilden* v. *Green, supra, Will of Butterfield,*

133 N. Y. 473, and *Johnson's Estate,* 185 Pa. St. 179, and says: "It is true that parts of a will which are valid will be sustained, though other parts are rejected as invalid, if no violence is done to the parts sustained; but this rule should apply only when the first gift is absolute."

In *Owsley* v. *Harrison,* 190 Ill. 235, the court construed the will of Carter H. Harrison, the elder. One clause of his will directs that a certain residue of his estate be kept together by his executors for a period of two years after his death and then divided into four equal shares. One-half of such share is devised to each of his four children in fee, the other half to the four children in equal shares for life, and on the death of any one of them, to the heirs of the body of the deceased. It was alleged that this made no valid disposition of the one-half of the estate devised for life with remainder over to the grandchildren of the testator because of the interval of two years, and the court so found, and in consequence held the entire provision respecting that half of the estate void and the property intestate. Since the life estates were in themselves valid, under the theory of plaintiff in error in the case at bar the court should have sustained the life estate, at the termination of which the property would have been disposed of as intestate property, but, manifestly following the rule established in *Lawrence* v. *Smith* and *Eldred* v. *Meek,* the whole provision was held bad.

In *Reid* v. *Voorhees,* 216 Ill. 236, the will of James Reid, after providing for the payment of his debts, makes a direct devise of his personal property to two persons in equal shares. He then gives to six nephews and nieces the rents to be collected by the executor from his real estate, to be divided equally and paid annually for thirty years. In case of the death of any one of the six without an heir the share was to go to the survivors. Thirty years after the testator's death the real estate was to be divided equally among the nephews and nieces or their heirs. The court

held that the provision for the division of the property thirty years after the death of the testator offends the rule against perpetuities; that the clause providing for the division of rents for thirty years is not a grant *in præsenti* and is also invalid; that the scheme of devise is entire, it being manifest that the testator intended to make a testamentary disposition of all his property and that because of the illegal clauses he has failed to do so, and if those clauses alone are set aside and other clauses given effect the intention of the testator as to the distribution of his property would fail; that the whole will, including even the bequests of personal property, should be set aside, because the beneficiaries under that clause were so related that as heirs they would take half of the estate, and therefore it was necessary to reject the specific bequests to them in order to avoid an injustice not intended by the testator. The court, in delivering the opinion, called attention to the necessity for considering both the separability of the valid from the invalid provisions, considering the will abstractly, and the effect thereof upon the testator's manifest wishes. The court said (p. 246): "All of the positions of appellees may be conceded and yet appellants' contentions sustained under the law. Where provisions of a will are, in fact, independent and not for the carrying out of a common or general purpose, it is undoubtedly true that such as are contrary to law may be rejected without in any manner affecting valid provisions. The statement, however, that a valid provision will be sustained if no violence is done to the parts sustained by the rejection of the invalid provisions is too narrow a statement of the rule, and is in disregard of the cardinal principle that the testator's wishes, as evidenced by the general scheme adopted, are to be taken into consideration, so that justice must be done if it can be. The rule as stated by appellees would seldom, if ever, permit a valid provision to be set aside because other provisions were held invalid. It would be difficult

to frame a will so that the rejection of the invalid provisions could seriously affect or do violence to valid provisions which might be sustained.  The correct solution can only be arrived at by taking into consideration the general scheme and intention of the testator, and the effect that defeating a part of the provisions may have upon the general scheme of the testator or on the beneficiaries or objects of his bounty."

In *Johnson* v. *Preston*, 226 Ill. 447, the will of Jane Platt bequeaths certain personal property specifically to John R. and George A. Platt, grandsons; gives a life estate in other personal property to James J. Platt, a son, with remainder absolutely to his five sons; devises to the executor certain real estate to hold for the period of twenty-five years from the date of probate of the will for the use and benefit of two of the grandsons, the fee then to vest in those two or their heirs absolutely; gives certain other real estate to the executor to hold for twenty-five years from the date of the probate of the will for the use and benefit of the three other grandsons, to go to them or to their heirs absolutely after twenty-five years from the date of the probate of the will.  There are also certain annuities to be paid by the executor while he shall hold the property, which are made a charge upon the estate thereafter. The court held that the devise to the executor to hold for twenty-five years from the date of the probate of the will introduced a certain contingency and violated the rule against perpetuities, and that therefore the entire devise to the executor of the real estate was void; that the controlling purpose of the testatrix is equally well subserved, since it was to give to her son, James J. Platt, and his five sons, her entire estate; that the interests of the grandchildren · were not postponed until the expiration of the twenty-five years, but that there was a clear intention to give an absolute fee simple estate with a present right of enjoyment, and since the payment of the annuities was not only im-

posed upon the executor but made a direct charge upon the estate, the ultimate result with the trust upheld cannot be any different from what it is with the trust eliminated. The entire trust was held void and the estate intestate.

The plaintiff in error relies upon the following Illinois cases: *Howe* v. *Hodge,* 152 Ill. 252; *Nevitt* v. *Woodburn,* 190 id. 283; *Chapman* v. *Cheney* 191 id. 574; *Quinlan* v. *Wickman,* 233 id. 39. There are a number of characteristics in these cases, we think, which distinguish them from the case at bar, some of which are as follows: (1) The valid provisions dispose of the *corpus* of the estate while in the case at bar they do not, and certainly the disposition of the fee or of the principal, if it be a fund, must be deemed a primary purpose of the testator; (2) in these cases the void provisions are a limitation over after such valid dispositions of the *corpus;* (3) both the life estates and the disposition of the fee intended by the testator are preserved by sustaining the valid provisions; (4) the void limitations over after the disposition of the fee are reasonably deemed separable; (5) in all these cases except one the devises which are held valid are directly to the beneficiaries, and their interests vest directly as legal interests, instead of depending upon the trust. On the other hand, in the cases in which the life estates have been held to fall with the void provisions it has appeared (1) the devises are to a trustee and the beneficiaries take only equitable interests, depending in each case upon the trust; (2) the clauses, including the void limitation, taken together, comprise one entire, distinct scheme of disposition of the whole property; (3) the fee is not disposed of by the valid clauses except in the case of *Johnson* v. *Preston,* where the court found the primary disposition of the fee by the will to be identical with its disposition as intestate estate.

The case at bar, in every essential, corresponds with one or the other, and in most respects with all, of the Illinois

cases in which the entire trust scheme has been held invalid. The following are some of its essential characteristics: (1) The entire property is devised to a trustee, in whom the legal title vests, and this, as is well said in *Amory* v. *Lord,* 5 Seld. 403, "completely negatives any theory of separate or separable trusts;" (2) the will presents one entire, complete and connected scheme for the disposition of the entire property, and all of the provisions thereof are connected and interdependent; (3) the valid clauses of the will make no disposition of the fee; (4) it cannot be made to appear that the enforcement of the other provisions, after cutting off the void limitation in fee to the great-grandchildren, effects the primary purpose of the testator.

Every case in this State, so far as we have been able to discover, where the will devises the property directly and completely to the trustee and then directs him to make certain provisions out of the income thereof has held the trust to be entire and not separable. It is difficult to see upon what theory it could be argued that this will creates any separate trust or separate interest on behalf of any beneficiary. The estate is in the hands of the trustee as a whole. It is to be handled, invested and re-invested and the income collected as a whole. There is at no time any separation, or any hint of a separation, of the fund itself until it is to be divided among the great-grandchildren. The trustee holds the legal title until the last one of the grandchildren is dead.

From a careful consideration of this will we are impressed with the view that John R. Barrett intended to dispose of his entire estate, not alone to create certain life estates therein, but to dispose of the fee, and that to only carry into execution the first part of the will and to eliminate the last would be entirely foreign to the intention of the testator. In the *Eldred case, supra,* the application of the rule contended for by the plaintiff in error is thus lim-

ited, where it is said: "Courts must construe a will according to its own terms. They cannot make a new will or build up a scheme for the purpose of carrying out what might be thought was or would be in accordance with the wishes of the testator. (*Tilden* v. *Green,* 130 N. Y. 29; *Lawrence* v. *Smith,* 163 Ill. 149.) It is true that parts of a will which are valid will be sustained though other parts are rejected as invalid, if no violence is done to the parts sustained. (*Lawrence* v. *Smith, supra;* Gray on Perpetuities, secs. 233, 423; *Howe* v. *Hodge,* 152 Ill. 252; 1 Jarman on Wills,—4th ed.—p. 297.) But this rule should apply only when the first gift is absolute. And bequests of a will valid in themselves will be rejected with the invalid ones where the retention of them would defeat the testator's wishes, as evidenced by the general scheme adopted, or where manifest injustice would result to the beneficiaries.—*Lawrence* v. *Smith, supra.*" And in *Lawrence* v. *Smith* great stress is laid upon the fact that the property was not given direct to the beneficiaries.

Since the submission of this cause Saxton S. Barrett, the plaintiff in error, has died, and his death having been suggested on the record, the First Trust and Savings Bank, a corporation, has been by order of court substituted as plaintiff in error in his stead, and the judgment in this case will be entered accordingly.

We are of the opinion that this case was properly disposed of by the trial court and that its decree should be affirmed.

The decree of the superior court will be affirmed.

*Decree affirmed.*