The judgment of conviction should be reversed and a new trial ordered.

Martin, J., concurs ; Bartlett and Vann, JJ., concur in the result ; Cullen, Ch. J., Gray and Haight, JJ., concur in the result on the ground of the refusal of the court to exclude the evidence of the complaining witness as to what she said to Mamie Meyers.

Judgment of conviction reversed, etc.

---

Walter Lewisohn et al., as Executors of and Trustees under the Will of Leonard Lewisohn, Deceased, Respondents, *v.* Rosalie V. Henry et al., Respondents, and Philip S. Henry, Individually and as Administrator of the Estate of Florine L. Henry, Deceased, Appellant.

Will — Estates Do Not Vest at the Death of the Testator When His Actual Intention to the Contrary Is Reasonably Clear.

A will directed that testator's residuary estate be divided into as many shares as would equal the number of his children, including such as should have died before him leaving issue, and that one share should be given absolutely to the issue of each child dying before him — devised to executors " to have and to hold " as trustees, one share, upon a separate

trust for the benefit of each child who outlived him, the net income of each share to be applied for his or her support, and "upon arrival" at the age of twenty-five, the trustees to pay to such child one-fourth of the *corpus* "in fee simple and absolutely," and "upon arrival" at the age of thirty, to pay one-third of the residue "in fee simple and absolutely" to such child; thenceforth the net income of the remainder to be applied to the use of the child during life, with the restriction then as well as previously that in the case of a daughter it should be free from the debts, control or interference of her husband. "Upon the death" of a child the trustees were to pay over the separate trust estate, "as it should then exist, with all the gains, etc.," in fee simple and absolutely to the appointees of such child, and in default of appointment to the issue then surviving in equal shares, and in default of issue to the next of kin of such child. *Held,* that there was no vesting of the share of any child or any part of it until the time when and provided the child reached the age specified; that there was no direct gift of the *corpus* to the children, nor any gift of it to them, direct or indirect, until the times specified for the trustees to convey "in fee simple and absolutely." A claim, therefore, by the administrator of a daughter who died after the testator, but before she reached the age of twenty-five years, to one-half of the share set aside for her by the trustees, upon the ground that the proportionate part which was to be paid to her in two installments, one at the age of twenty-five and the other at the age of thirty, had vested before her death, cannot be sustained.

*Lewisohn* v. *Henry,* 92 App. Div. 532, affirmed.

(Argued October 20, 1904; decided November 15, 1904.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 12, 1904, modifying and affirming as modified a judgment judicially construing the will of Leonard Lewisohn, deceased, entered upon the report of a referee.

This action was brought to construe the will of the late Leonard Lewisohn, who died on the 5th of March, 1902, leaving four sons and five daughters as his heirs at law. He left a large estate consisting mainly of personal property, but including an undivided interest in certain realty. The controversy arose over the seventh paragraph of the will, by which he devised and bequeathed the bulk of his estate in these words:

"*Seventh.* I direct that my Executors hereinafter named, or such of them as shall qualify and act, divide all the rest, residue and remainder of the property and estate, both real

23

and personal of every kind and description and wheresoever situated which shall belong to me or be subject to my disposal at the time of my death into such number of equal shares as shall be equal to the number of children who shall survive me, and of my children who shall have died before me leaving issue who shall survive me, and set apart one of such equal shares for each of my children who shall survive me, and one of such equal shares for the issue of each child of mine who shall have died before me, leaving issue me surviving; and convey, transfer, deliver and pay over one of such equal shares to the issue of each one of my children who shall have died before me leaving issue me surviving, in equal shares, *per stirpes* and not *per capita*, to whom I give, devise and bequeath the same accordingly; and that my said Executors set apart one of such equal shares for the benefit of each of my children who shall survive me, and I give, devise and bequeath the same to my said Executors and to such of them as shall qualify and act; as Trustees to have and to hold each share so set apart for the benefit of a child of mine (or the portion thereof not paid over and transferred to such child as hereinafter directed), upon a separate trust, for the benefit of such person for whom or for whose benefit the same shall have been set apart as aforesaid during his or her natural life, which trust as to each share of such property or estate by this article of my will hereinbefore directed to be held in trust for the benefit of a child of mine shall be to collect and receive the rents, issues, income and profits of so much thereof as shall be real property and to invest and keep invested so much thereof as shall be personal property with power to call in and change the investments thereof from time to time and to collect and receive the income thereof and after paying thereout all lawful expenses and charges, to apply the net income from the said trust estate arising, from time to time as received, to the use of the person in trust for whom such trust estate shall be held as aforesaid for so long during the life of such person as he or she shall remain under the age of twenty-five years, the

income of any such share held in trust for any daughter of mine to be free from the debts, control or interference of any husband she may have; and upon the arrival at the age of twenty-five years, of the person in trust for whom such trust estate shall be so held, to convey, transfer, deliver and pay over one equal fourth part of the capital of such trust estate with all gains and increase of capital thereof, if any, in fee simple and absolutely to such person; and after such person in trust for whom such trust estate shall be held in trust as aforesaid shall have attained the age of twenty-five years, thenceforward for so long during the natural life of such person as he or she shall remain under the age of thirty years to continue to hold the residue of such trust estate, in trust, to collect and receive the rents, issues, income and profits of so much thereof as shall be real property and to invest and keep invested so much thereof as shall be personal property, with power to call in and change the investments thereof from time to time and to collect and receive the income thereof and after paying thereof all lawful expenses and charges, to apply the net income from the said trust estate arising from time to time as received to the use of the person in trust for whom such trust estate shall be held as aforesaid, the income of such trust estate held in trust for any daughter of mine to be free from the debts, control or interference of any husband she may have; and upon the arrival at the age of thirty years of such person in trust for whom such trust estate shall be held to convey, transfer, deliver and pay over one equal third part of the capital of such trust estate then remaining including all gains and increase of capital thereof, if any, in fee simple and absolutely to such person in trust for whom such trust estate shall be held; and from and after such person shall have attained the age of thirty years thenceforward, during the residue of the natural life of such person in trust for whom such trust estate shall have been held to continue to hold the residue of such trust estate in trust to collect and receive the rents, issues, income and profits of so much thereof as shall be real property and to invest and keep invested so much

thereof as shall be personal property with power to call in and change the investments thereof from time to time and to collect and receive the income thereof, and, after paying thereout all lawful expenses and charges, to apply the net income from the said trust estate arising from time to time, as received, to the use of the person in trust for whom such trust estate shall be held as aforesaid, the income of any such trust estate held in trust for any daughter of mine to be free from the debts, control or interference of any husband she may have, and upon the death of such person in trust for whom such trust estate shall be held, to convey, transfer, deliver and pay over the capital of such trust estate as it shall then exist, with all gains and increase of capital thereof, if any, in fee simple and absolutely to such person or persons and in such shares and proportions as the person in trust for whom such trust estate shall have been held, shall by will direct and appoint; and in default of such direction or appointment, or in so far as such direction or appointment may not extend or be effectual, to the issue then surviving of such person in trust for whom such trust estate shall have been held, in equal shares *per stirpes* and not *per capita,* or if such person in trust for whom such trust estate shall have been held as aforesaid shall leave no issue him or her surviving, to the next of kin of such person in trust for whom such trust estate shall have been held, in the shares and proportions to which under the laws of the State of New York as they shall then exist, they would be entitled to the same, if the same were personal property and such person in trust for whom such trust estate shall have been held had died possessed thereof intestate."

On the 11th of January, 1903, Florine L. Henry, one of the testator's daughters, died, intestate and under the age of 25, leaving her surviving Philip S. Henry, her husband, and two infant children, Rosalie V. and Leanore Gladys Henry. On the 31st of March, 1903, letters of administration upon the estate of Mrs. Henry were issued to her husband, who duly qualified and has since acted as administrator. The

executors of Leonard Lewisohn divided his residuary estate into nine equal parts, one of which they set apart for Florine L. Henry, as required by the will. Philip S. Henry, as administrator, claims one-half of that share, so far as it consists of personal property, and so far as it consists of real estate, he, as an individual, claims the right of tenant by curtesy therein. The guardian *ad litem* of the infant children of Mrs. Henry claims that they are entitled to the entire estate and that their father has no interest therein.

The referee before whom the action was tried sustained the position of the husband and administrator upon the ground that the undivided half that was to be paid to Mrs. Henry in installments vested in her upon the death of her father. The Appellate Division upon appeal reversed this determination, and rendered judgment in favor of the infants upon the ground that there was no vesting in the daughter and that her children took the entire trust fund under the will and no part thereof as next of kin of their mother. From that judgment Philip S. Henry individually and as administrator appealed to this court.

*P. J. Rooney* for appellant. The law favors the vesting of estates. (*Hersee* v. *Simpson*, 154 N. Y. 496; *Carr* v. *Smith*, 25 App. Div. 214; *Bethea* v. *Bethea*, 116 Ala. 265; 1 Thomas on Estates, 259; *Byrnes* v. *Stilwell*, 103 N. Y. 453; *Stokes* v. *Weston*, 142 N. Y. 433; *Smith* v. *Edwards*, 88 N. Y. 92; *Bowditch* v. *Ayrault*, 138 N. Y. 222; *Moore* v. *Lyons*, 25 Wend. 119.) The direction to sever the trust fund set apart for Mrs. Henry's benefit from the rest of the estate, coupled with the gift to her of the entire income and the direction to pay her the half of the *corpus* in separate portions at the ages of twenty-five and thirty, operated to vest in Mrs. Henry, immediately upon the death of the testator, the remainder in such parts subject only to the precedent trust estate created for her benefit. (*Paterson* v. *Ellis*, 11 Wend. 259; *Tucker* v. *Bishop*, 16 N. Y. 402; *Travers* v. *Schell*, 20 N. Y. 89; *Gilman* v. *Reddington*, 24 N. Y. 9; *Everitt* v.

*Everitt*, 29 N. Y. 39; *Oxley* v. *Lane*, 35 N. Y. 340; *Lovett* v. *Gillender*, 35 N. Y. 617; *Embury* v. *Sheldon*, 68 N. Y. 227; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Loder* v. *Hatfield*, 71 N. Y. 92.) The gift to Mrs. Henry was not defeated or cut down by the limitation over to her appointees or issue, as that gift over did not relate to the moiety of the trust fund directed to be paid Mrs. Henry. (*Staats* v. *Staats*, 11 Johns. 337; *Abbey* v. *Aymar*, 3 Dem. 400; *De Nottebeck* v. *Astor*, 13 N. Y. 98; *Taggart* v. *Murray*, 53 N. Y. 233; *Sweet* v. *Chase*, 2 N. Y. 73; *Tyson* v. *Blake*, 22 N. Y. 559; *Bliven* v. *Seymour*, 88 N. Y. 469; *Freeman* v. *Coit*, 96 N. Y. 63; *Goebel* v. *Wolf*, 113 N. Y. 405; *Matter of Bartholomew*, 1 M. & G. 359.)

*F. R. Minrath* for plaintiffs, respondents.

*Campbell E. Locke* for defendants, respondents. The lawful and clearly expressed intention in the will of Leonard Lewisohn that upon the death of his daughter, Florine L. Henry, without having exercised the power of appointment conferred on her, one of the shares of the trust fund created in said will should pass as it then existed to her issue then surviving must prevail. (*Wadsworth* v. *Murray*, 161 N. Y. 274; *Patchen* v. *Patchen*, 121 N. Y. 432; *Fargo* v. *Squiers*, 154 N. Y. 250; *Shipman* v. *Rollins*, 98 N. Y. 311; *Baylies* v. *Hamilton*, 36 App. Div. 133; *Wylie* v. *Lockwood*, 86 N. Y. 291; *Sweet* v. *Geisenhainer*, 3 Bradf. Surr. 114; *Chrystie* v. *Phyfe*, 19 N. Y. 344; *Mann* v. *Mann*, 14 Johns. 1; *Matter of Stanfield*, L. R. [15 Ch. Div.] 86; *Wake* v. *Varah*, L. R. [2 Ch. Div.] 348.) Florine L. Henry had no interest in the share of the residuary estate of Leonard Lewisohn directed by his will to be set apart for the benefit of herself and her issue that would prevent such share in its entirety from passing to her issue upon her death under the age of twenty-five years intestate. (*Rudd* v. *Cornell*, 58 App. Div. 207; *Matter of Baer*, 147 N. Y. 348; *Everitt* v. *Everitt*, 29 N. Y. 39; *Nathan* v. *Hendricks*, 87 Hun, 483; *Magill* v. *McMillan*,

23 Hun, 193; *Matter of Crane,* 164 N. Y. 71; *Goebel* v.
*Wolf,* 113 N. Y. 405; *Delafield* v. *Shipman,* 103 N. Y. 463;
*Smith* v. *Edwards,* 88 N. Y. 92; *Paget* v. *Melcher,* 21 Misc.
Rep. 196.) The infant defendants, Rosalie V. Henry and
Leonore Gladys Henry, upon the death of their mother,
Florine L. Henry, under the age of twenty-five years, intes-
tate, became entitled to the principal of one of the shares of
the trust fund created by the will of Leonard Lewisohn.
(*Fargo* v. *Squiers,* 6 App. Div. 485; 154 N. Y. 250; *Dim-
mick* v. *Patterson,* 142 N. Y. 326; *Newell* v. *Nichols,* 12
Hun, 604; *Paget* v. *Melcher,* 156 N. Y. 399; *Matter of
Ridgway,* 4 Redf. 226; *Buckman* v. *Schermerhorn,* 3 Sandf.
Ch. 181; *Schermerhorn* v. *Cotting,* 131 N. Y. 59.)

VANN, J. The general purpose of the testator, as expressed
in the seventh clause of his will, was to provide a liberal
income for his children as long as they lived, free as to his
daughters from the debts, control or interference of their
husbands; to give his children one-half of his residuary estate
as they grew old enough to be trusted with it, not all at once,
however, but part at a certain age and the rest after an inter-
val of five years and to give the other half to his grandchil-
dren when it was no longer needed to produce an income for
his children. Apparently he wished to do all he could for his
children and at the same time prevent them from wasting his
vast estate. He knew that whatever he gave them as a
direct, immediate and vested gift they could dispose of and
that they might waste it. He wished to give them nothing
but the income at first and that subject to a limitation in the
case of his daughters. He intended to keep one-half of the
principal intact as long as his children lived, so that they
might have an assured income, and as they passed away to
give it in the proper proportions to their issue. The other
half he wished to give to his children, but not so that they
could dispose of it until they severally reached an age when
maturity of judgment should make them prudent.

He sought to effect these objects through a separate trust

for the benefit of each child. Accordingly he directed his
executors to divide his residuary estate into as many shares as
would equal the number of his children, including such as
should have died before him, leaving issue. He gave one
share absolutely and in terms to the issue of each child dying
before him, but, as it turned out, all of his children survived
him. The remaining shares he gave to his executors " to have
and to hold " as trustees, one share upon a separate trust for
the benefit of each child who outlived him, with power to col-
lect rents and profits, to invest, reinvest and the like. Each
trust is express and in the form permitted by the statute,
which provides that in such case " the beneficiary shall not
take any legal estate or interest in the property, but may
enforce performance of the trust." (Real Property Law,
§§ 76, 80.) He required his executors and trustees, after
paying charges and expenses, to apply the net income of each
share to the use of the child for whom it was held in trust
until he or she should reach the age of 25 years, when they
were to convey and pay over one-fourth of the capital of such
trust estate " in fee simple and absolutely " to such child.
After this the net income of the residue was to be applied to
the use of the child until he or she should become 30 years
old, when one-third of the trust estate then remaining was
to be conveyed and paid over " in fee simple and absolutely "
to such child. Thenceforth the net income of the remainder
then left was to be applied to the use of the child during life,
with the restriction then as well as previously that, in the case
of a daughter, it should be free from the debts, control or·
interference of her husband. Upon the death of a child the
trustees were directed to convey and pay over the separate
trust estate as it should then exist in fee simple and absolutely
to the appointees of such child and in default of appointment
to the issue then surviving in equal shares and in default of
issue to the next of kin of such child.

One of the daughters died intestate after her father but
before she reached the age of 25, leaving a husband and two
infant children. The administrator of her estate claims one-

half of the share set aside for her by the trustees upon the ground that the proportionate part, which was to be paid to her in two installments, one at the age of 25 and the other at the age of 30, had vested in her before her death. This construction of the will would defeat the primary object of the testator, which was to prevent his children from disposing of any part of the capital of the shares set apart for them, respectively, until they reached a certain age. He was determined that they should not squander his estate and he took great care to prevent that result, which he could not prevent in the case of their issue, appointees and next of kin owing to the limitations placed by law upon the right to create trusts. If a share vested in each child upon the death of the testator, it was subject to alienation at the will of the owner, for a vested right is alienable and may be assigned. Whatever one owns he may sell, even if the date of full possession and enjoyment is not due. (1 R. S. 723, § 10, 725, § 35; *Paget* v. *Melcher*, 156 N. Y. 399, 405.) While the general rule favors the vesting of estates it was adopted by courts as a guide to the probable intention of testators and is never applied when that intention, as gathered from the entire will, is that the estate should not vest. All rules for the construction of wills yield to the actual intention, when that is reasonably clear to the mind of the judge reading the words of the testator.

The express gift of capital is not to the children, but first to the issue of any child dying before the testator and second, a gift of what was left to the executors in trust for the children. The trustees took the legal title with the usual power of management and with the duty of applying the net income to the use of the respective beneficiaries. They were to "have and to hold" each share until the child for whose benefit it had been set apart should reach a certain age and, "upon arrival" at that age, they were to convey and pay over to him or her a part of the capital "in fee simple and absolutely." The use of the word "upon" followed by a direction to convey indicates that until the contingency named should happen there was to be no vesting. So, the use of the phrase "in fee

simple and absolutely " in directing payment of the installments
and in the direction for final distribution, indicates that as
there was clearly no previous vesting in the case of the latter,
none was intended in the case of the former. Said word and
said phrase in each instance point to the time of vesting. There
was no present gift to any child, but when or provided the child
reached the age specified. No part of the capital was to go to the
children until the time fixed for absolute transfer to them should
arrive. The direct gift to the executors and the absence of
any gift of capital to the children in the first instance, show
that there was no intent to vest title in them prior to the date
named for distribution. The gift of capital to the children
was through the direction to convey, and there was no vesting
until the time to convey came around. (*Matter of Baer*, 147
N. Y. 348, 354; *Matter of Crane*, 164 N. Y. 71, 76.) An
earlier vesting would serve no useful purpose and might defeat
the object of the testator in guarding against improvidence.
The title was to continue in the trustees until the trust ended
subject to payment over of the installments if the beneficiary
lived long enough, and upon the death of the beneficiary " the
capital of such estate," in the language of the testator, " as it
shall then exist with all the gains, etc.," was to go to the
appointees by will, or if there were none, to the issue or next
of kin. The language used in directing the final distribution
at the end of the trust shows that the thought of the testator
was that the entire capital might then be intact. He did not
speak of the " residue " of the share, as he had previously
when he referred to what was left after payment of an install-
ment, and as would be natural if he thought that the distri-
bution by installments would necessarily precede the final dis-
tribution. On the other hand he directed that the capital of
the trust estate " as it shall then exist " should be conveyed
by the trustees in fee simple and absolutely to the appointees,
issue or next of kin of the deceased child.

The will as we construe it shows no intent that any part of
the capital should vest in Mrs. Henry before she became
twenty-five years old, or that the gift over upon her death

meant if she died after the age of thirty. The time is fixed by the words "upon the death," which are unqualified and mean. a death at any time after the death of the testator, for he had expressly provided for the case of a child who might die before he did. As the testator did not limit the meaning of these words, we cannot, but must read them as he wrote them, adding nothing and omitting nothing. The punctuation, which is relied upon in this connection, is neither exact nor methodical throughout the seventh clause and hence is of slight importance. In any event it is a hazardous guide, especially when the testator merely hears the will read without reading it himself, and should be resorted to only when all other means of interpretation fail. (*Kinkele* v. *Wilson*, 151 N. Y. 269, 277.)

The grammatical construction of the seventh clause is peculiar, for while it contains over twelve hundred words it consists of but a single sentence. The frequent use of the conjunctive " and " unites into one sentence what otherwise would extend into many. The provisions which are thus in form set forth as grammatically connected are not so united in sense and substance as to be given a co-ordinate operation.

The rule that a clause containing an absolute gift will not be cut down by a later clause unless the latter is as clear and decisive as the former has no application, because there was no direct gift of capital to the children, nor, indeed, any gift of capital to them direct or indirect, until the time came for the trustees to convey to them " in fee simple and absolutely."

We concur with the learned judges of the Appellate Division in the conclusion that the children of Florine L. Henry took under the will of their grandfather and not as next of kin of their mother.

The judgment should be affirmed, with costs to the guardian *ad litem* payable out of the fund.

CULLEN, Ch. J., GRAY, BARTLETT, HAIGHT, MARTIN and WERNER, JJ., concur.

Judgment affirmed.