ANDERSON et al. v. MENEFEE et al.
(No. 8063.)†

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 23, 1915. Rehearing Denied March 6, 1915.)

1. PERPETUITIES ⬅4—ENJOYMENT OF VESTED ESTATES—POSTPONEMENT.

A bequest or devise is not void as violating the rule against perpetuities so long as the estate vests within the period of a life or lives in being and 21 years thereafter, and it is immaterial how long the mere enjoyment of the estate may be postponed.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ⬅4.]

2. PERPETUITIES ⬅4—"PERPETUITY." •

A "perpetuity" is a limitation taking the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being and 21 years thereafter.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ⬅4.

For other definitions, see Words and Phrases, First and Second Series, Perpetuity.]

3. REMAINDERS ⬅1—"VESTED REMAINDER."

A remainder is vested if, at every moment during its continuance, it is ready to come into possession whenever and however the preceding estates determine.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 1; Dec. Dig. ⬅1.

For other definitions, see Words and Phrases, First and Second Series, Vested Remainder.]

4. REMAINDERS ☞4—"CONTINGENT REMAINDER."

A remainder is contingent if, and in order for it to come into possession, the fulfillment of some condition precedent other than the determination of the preceding estates is necessary.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 2; Dec. Dig. ☞4.

For other definitions, see Words and Phrases, First and Second Series, Contingent Remainder.]

5. ESTATES ☞1 — "VESTED ESTATE." — NATURE.

A "vested estate" is an interest clothed with a present, legal, and existing right of alienation.

[Ed. Note.—For other cases, see Estates, Cent. Dig. § 1; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Vested Estate.]

6. WILLS ☞447, 629—CONSTRUCTION—RULE AGAINST PERPETUITIES.

Where a will, fairly construed, leaves in doubt the question whether a devise or bequest is so remote as to violate the rule against perpetuities, the doubt will be resolved to vest the title at the earliest possible moment, so as to uphold the will; the law favoring the vesting of estates.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 963, 1461, 1462; Dec. Dig. ☞447, 629.]

7. PERPETUITIES ☞4 — CONSTRUCTION OF WILL—INTENT OF TESTATOR.

In determining whether an estate vests under a will within the period of the rule against perpetuities, the legally expressed intention of the testator as found within the four corners of the will is the leading guide of the court.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ☞4.]

8. PERPETUITIES ☞4—VESTING OF ESTATES—LIFE BENEFICIARY AT DISCRETION OF EXECUTOR IN INCOME.

Where a testator's will provided that his estate was to vest in executors, subject to certain trusts alleged to be in violation of the rule against perpetuities, and where it was provided that the testator's widow for her life should be paid by the executors "such portions of the rents, revenues, interest, and income" arising from the property as they might deem proper, such provision vested in the widow no legal or equitable estate in the corpus of the property sufficient to take its disposition from the operation of the rule against perpetuities.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ☞4.]

9. PERPETUITIES ☞4—RULE AGAINST—BEQUEST SUBJECT TO DEFEASANCE.

In determining whether the estate vests in some person within the period of the rule against perpetuities so as to avoid the operation of that rule, it is immaterial if the right vested is subject to defeasance by the contingency of the death of the person.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ☞4.]

10. PERPETUITIES ☞4—VESTING OF ESTATES—LIFE BENEFICIARY AT DISCRETION OF EXECUTOR IN INCOME.

Where a testator left his property to executors, subject to trusts for the payment of income, in the discretion of the executors, until 30 years after his death, to his wife and daughters, when the principal was to go to such daughters or their heirs in certain proportions, such ultimate disposition of the fund being concededly void as violating the rule against perpetuities, unless the estate vested earlier, the right which the daughters had to receive the income of the fund at the discretion of the executors was not such a vesting of the estate as to take the case from the operation of the rule against perpetuities.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ☞4.]

11. WILLS ☞81—CONSTRUCTION—INTENTION OF TESTATOR.

Where a will manifested two plans, a disposition of property to provide for the widow and son of testator, and a disposition, void as creating a perpetuity, to provide for the daughters of testator and their heirs, there being nothing in the will or in the evidence indicating that the testator would have written his will to provide only for his wife and son, the whole must fall on account of the invalidity of the provisions relating to the daughters under the rule against perpetuities, since where parts of a will are void the whole will be set aside if to sustain the other parts would work an injustice or violate the general scheme of testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. ☞81.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by Mrs. Bessie Menefee and another against Bernie L. Anderson and another, as executors, and another, contesting the validity of the will of Neil P. Anderson, deceased. Judgment for plaintiffs, and defendants appeal. Affirmed.

Flournoy, Smith & Storer, of Ft. Worth, for appellants. Capps, Cantey, Hanger & Short, David B. Trammell, and Goree & Turner, all of Ft. Worth, for appellees.

CONNER, C. J. This appeal is from a judgment annulling the last will and testament of Neil P. Anderson, who died in the city of Ft. Worth on the 27th day of February, 1912, at the age of 64 years. The will reads as follows:

"The State of Texas, Tarrant County.

"In the name of God, amen:

"I, Neil P. Anderson, knowing the uncertainty of life and the certainty of death, and being of sound mind and disposing memory, do make and publish this my last will and testament.

"Item First. I direct that my executors hereinafter named shall pay all of my just debts as soon as practicable after the probate of this my last will and testament.

"Item Second. The present homestead occupied by myself and wife, Lizzie Anderson, having been purchased by me with her separate means and funds, and the deed thereto taken in her own name, it is my will, wish and bequest that the title to the same shall vest in her absolutely upon my death.

"Item Third. I hereby devise and bequeath all of the estate, right, title and interest in possession, reversion or remainder which I have or may have at the time of my death of in or to any lands, tenements, hereditaments or rents charged upon or issuing out of them, or which I shall have of in or to any personal property, or in or to any other property whatsoever and wheresoever situated to my executors hereinafter named upon the conditions and subject to the trusts herein specified.

"Item Fourth. It is my wish, will and bequest, and I direct that my said executors shall

manage, control and dispose of the property of which I may die possessed, except as herein stated, using their best discretion and judgment during the life time of my said wife, Lizzie Anderson, and that they shall pay over to her such portion of the rents, revenues, interest and income from my said estate as they may deem proper to be used and disposed of according to her own wishes and desires.

"Item Fifth. It is my will, wish and bequest, and I herein provide, that one-fourth (¼) of my said estate at the death of my said wife shall pass to and become the property of my son Bernie L. Anderson absolutely, and that the remaining three-fourths (¾) shall pass to and be vested in my executors on the conditions and subject to the trusts herein provided.

"Item Sixth. The remaining three-fourths (¾) of my estate not hereinbefore bequeathed and disposed of shall upon the death of my wife, Lizzie Anderson, be used, managed, possessed and controlled by my executors according to their best judgment and discretion. The net income of the same or so much thereof as my executors shall deem proper shall by them be paid to my daughters,. Mrs. Flora Berney (née Flora Anderson), Mrs. Bessie Menefee (née Bessie Anderson), and Hattie May Anderson for the period of thirty years from the date of my death in such proportions as to my executors may seem proper. And should either of my said daughters die before the expiration of said thirty years after my death, then the share of the income of my estate which would under this will go to such daughter, or so much as my executors shall see proper to pay them, shall be by them paid to the descendant or descendants of such deceased daughter until the expiration of the said 30 years. But should either of my daughters die before the expiration of thirty years from my death without issue, then, one-third of the one-fourth of my said estate which would have passed to such daughter under this will shall pass to and vest in my son Bernie L. Anderson, and the title to and possession of the other two-thirds of such property of my estate shall pass to and be vested in my said executors, who shall continue to manage the same and dispose of the net income therefrom in accordance with this will, paying to my surviving two daughters, or the heirs of their body as the case may be, the net income thereof, or such portion of the same as they may deem proper. And if thereafter another one of my daughters shall die before the expiration of said thirty years from the date of my death without issue then one-half of the proportion of the said estate to which she would be entitled shall go to and be vested in my son Bernie L. Anderson, and the title to the other one-half of which shall pass to and be vested in my said executors who shall continue to manage the same in· all respects as herein directed for the̊ other portions of my estate, and to pay out the net income therefrom to my surviving daughter or to the heirs of her body, or such portions thereof as they may deem proper. And if the other one of my daughters should die before the expiration of the said thirty years from the date of my death without heirs̊ of her body, then, and in that event, all of said estate shall pass to and be vested in my son Bernie L. Anderson.

"Item Seventh. I will and direct that at the expiration of thirty years from the date of my death my said executors shall pay over and convey to my said daughters or to the heirs of the body of such of them as may have died before said time, all of my estate and the accumulations thereon in equal proportions; that is to say, to each of my daughters one-third, or if either of my said daughters be at that time deceased, the heirs of the body of such daughter one-third.

"If one of my daughters shall have died without issue then the remainder of my estate shall be divided equally between the two survivors, or if one of them shall have died leaving heirs of her body, to the surviving daughter one-half, and to the heirs of the body of such other daughter in equal proportion the other half of the remainder of my estate. And if two of my daughters shall have died without issue before the expiration of said thirty years, then my executors are directed to pay over all of my remaining estate to my surviving daughter or the heirs of her body. But if all of my daughters shall have died without issue then the entire estate is to pass to my son Bernie L. Anderson according to the method provided for in the sixth item of this will. This item is to be construed in connection with item sixth and not in any way as altering or revoking it.

"Item Eighth. I hereby direct and provide that in as much as my wife Lizzie Anderson is entitled to a half interest in all of our community estate at my death, that should she survive me she shall consent to the terms of ̓this will as disposing of the entire community estate herein bequeathed, and which shall be understood to include all of the community property owned by us at my death of whatsoever nature, kind and description save and except, however, out of this partition the homestead hereinbefore specifically mentioned. And my said wife shall within thirty days after the probate of this will duly execute and sign a written acceptance of all of the terms and conditions of this will and deliver the same to my said executors hereinafter named properly proved for record, wherein my said wife shall consent to the terms and conditions of this will, and that the entire community property of ourselves shall be managed, controlled and disposed of by my said executors under the terms, provisions and conditions of this my will.

"But should my wife not see proper within thirty days from the probate of this will to execute and deliver the said acceptance to my executors of the terms and conditions of this will, then I direct that said community estate shall be partitioned, giving to my said wife one-half thereof, to which under the law she is entitled, after paying all of my just debts, and that my one-half of my estate shall be administered, controlled and disposed of by my executors under and in pursuance of the terms, conditions and restrictions of this my last will and testament.

"Item Ninth. It is my will, wish and bequest that if either of my said executors shall die or refuse to qualify and act as executors or trustees, or should either of them become disqualified from acting and carrying out the provisions of this will, then the one of my said executors that shall survive, or who shall qualify, shall be clothed with all of the powers and duties herein conferred on the two executors as fully and amply as if such executor was herein named, designated and appointed the sole and only executor of this my last will and testament.

"Item Tenth. I hereby name. nominate, constitute and appoint Morris E. Berney and Bernie L. Anderson the executors of this my last will and testament, and request and direct that no action be taken in or by the probate court except for the return of an inventory and appraisement of my estate and the probate and registration of this my last will and testament, and that my executors be exempt from and relieved ·of giving any bond as such executors or as trustees hereunder.

"In witness whereof I have hereunto set my hand this the 31st day of October, A. D. 1899, in the presence of A. M. Carter and C. K. Bell who each sign this will at my request and in my presence as witnesses hereto, and who each see me sign the same.          Neil P. Anderson.
          "A. M. Carter.
          "C. K. Bell."

, Neil P. Anderson left surviving him the following named persons in the relations

herein set forth, who were then and are now the only persons entitled to inherit from him or to have any interest in his estate as his heirs at law under the statutes of Texas, to wit: His wife and widow, Elizabeth Anderson, now of the age of 64 years and unmarried, and the following named children and only children, being the children of said Neil P. Anderson and his said wife, Elizabeth Anderson: a son, Bernie L. Anderson, now of the age of 34 years, and three daughters, viz., Bessie Menefee, wife of O. R. Menefee, now of the age of 38 years; Flora Berney, wife of Morris E. Berney, now of the age of 40 years; Hattie Mae Gwynne, widow of I. A. Gwynne, now of the age of 32 years and unmarried. Flora Berney has no children or descendants of children; Bessie Menefee has two minor children, Elizabeth Menefee, aged 14 years, and Flora Jane Menefee, aged 9 years, and said Bessie Menefee has no other children or descendants of children. Hattie Mae Gwynne has two infant children, Katherine Gwynne, aged 8 years, and Allen Gwynne, aged 5 years, and has no other children or descendants of children.

The entire property involved in this controversy and all the property referred to in the will or in which the said Neil P. Anderson was in any wise interested, was at the time of his death the community property of himself and his said wife Elizabeth Anderson, except certain property named in the will as the separate property of said Elizabeth Anderson. She elected and declared her intention to claim and take half the said community property, independent of and clear of the provisions of said will, by and under her claim of right to said half as survivor in community. She claims the right, and the executors and trustees in the will concede the right in her, to take under the terms of the will the interest provided for her by the will in the other half of the community property. All the property of whatsoever character involved, except the property hereinbefore referred to as the separate property of the said Elizabeth Anderson, and except a home on Pennsylvania avenue in Ft. Worth, and the furnishings thereof, which are now occupied and held by the said Elizabeth Anderson as homestead, is and has been since the qualification of the executors named in said will, in their custody and control, they holding the same and claiming the right to hold the same and control the same under the terms of said will, and their qualifications as executors in the probate court. No demand has been made by the said Elizabeth Anderson for a partition of the said estate under her said claim of right to half of same as her community property, and no partition of said estate has been made. An inventory and appraisement of the said estate was duly filed in the county court, and the total value of said estate, including the whole of said community estate, consisting of real and personal property, is, according to the said inventory and appraisement, the sum of about $480,000. A considerable and important portion in value of the personal property is made up of stocks and securities in various cotton compress and other corporate organizations. At the time of the trial of the cause in the district court all the debts of said Neil P. Anderson and his said estate, existing at the time of his death, had been paid, and there were no obligations of the said estate at the time of the said trial, except such current and accruing obligations as arose out of the management and control of said property by the said executors, being expenses incident to the said management and control.

The will was adjudged invalid on the ground that it violates section 26, art. 1, of our Constitution forbidding perpetuities, and our revisory power has been invoked to determine whether such construction of the will by the trial court is the proper one. If it is, the judgment must be affirmed. If not, then the judgment must be reversed and here rendered for the executors and Mrs. Elizabeth Anderson, appellants, who are endeavoring to uphold the will.

[1, 2] In the beginning we wish to acknowledge our indebtedness to the counsel of the respective sides of the contention for the industry, painstaking care, and exceptional ability manifested both by brief and on the oral submission. It has greatly lessened our labor and conduced, as we trust, to the accuracy of our conclusions. The several briefs cover some 348 pages, with citation of and quotation from a great number of authorities, all of which, in view of the importance of the issues involved, we have endeavored to carefully consider. As may be well imagined, the presentation of the case covers a wide field for investigation. For the most part, however, the numerous propositions, discussions, and authorities presented are collateral to and revolve around the vital question of whether the will in question created estates in the wife and children of Neil P. Anderson that have already vested, or that will certainly vest within the period allowable by the rule against perpetuities. If, properly construed, the will does so vest the devised estate, then it is not subject to the objection urged against it; for in such case it is immaterial that full possession and enjoyment of the property is postponed beyond the period of a life or lives in being and 21 years thereafter with the ordinary period of gestation added, this being the time fixed by the courts as the limit allowable for the enforcement of a devised estate under the rule against perpetuities. As said in Bigelow v. Cady, 171 Ill. 229, 48 N. E. 974, 63 Am. St. Rep. 230:

"Perpetuity is a limitation, taking the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being and 21 years thereafter. If, by any possibility, a devise violates the rule against perpetuity, it cannot stand. If there is pos-

sibility that a violation of this rule ·can happen, then the devise must be held void. Waldo v. Cummings, 45 Ill. 421; Post v. Rohrback, 142 Ill. 600, 32 N. E. 687; Deford v. Deford, 36 Md. 176; Sears v. Putnam. 102 Mass. 6; Gray, Perps. §§ 214, 369, 374. Neither will its violation be tolerated when it is covered by a trust any more than when it actually appears in the creation of a legal state. The courts of equity will not permit limitations of future equitable interests to transcend those of legal interest of executory devises and shifting and springing uses at law. Howe v. Hodge, 152 Ill. 252, 38 N. E. 1083."

See, also, Gray, Rule Against Perpetuities (2d Ed.) § 201, p. 166; 30 Cyc. 1485; 2 Underhill on Wills, § 883, p. 1347.

As indicated, the rule deals with the vesting of the title, and not with the actual receiving of the profits of the estate, and though the person who is to take may not be known at the testator's death, or be entitled to the actual enjoyment, or have the right of possession of the property within the period, the rule is satisfied if he must become certain and his title vested within the period. Laval v. Staffel, 64 Tex. 370; Hancock v. Butler, 21 Tex. 806; Thornton v. Zea, 22 Tex. Civ. App. 509, 55 S. W. 798; McClelland v. McClelland, 37 S. W. 350; Underhill on Wills, vol. 2, pp. 1350, 1351; Perry on Trusts (6th Ed.) § 381, and note 2; Seaver v. Fitzgerald, 141 Mass. 401.

[3-5] It becomes important then to have in mind what is meant by vesting of the title. . Mr. Gray in his work on Perpetuities, p. 5, thus defines the distinction between a vested and a contingent remainder:

"A remainder is vested if, at every moment during its continuance it is ready to come into possession, whenever and however the preceding estates determine. A remainder is contingent if, and in order for it to come into possession, the fulfillment of some condition precedent, other than the determination of the preceding estates, is necessary."

In one of our own cases the following definition is given:

"The word 'vest' is defined to mean 'to give an immediate, fixed right of present or future enjoyment.' Bouv. Law Dict.; Stewart v. Harriman, 56 N. H. 29, 22 Am. Rep. 408. 'By vested estate, in relation to interests of a freehold quality, is to be understood an interest clothed, as to legal estates, with a legal seisin, or, as to equitable estates, with an equitable seisin, which enables the person to ·whom interest is limited to exercise the right of present or future enjoyment immediately, in point of estate. A vested estate is an interest clothed with a present, legal, and existing right of alienation.' 1 Prest. Est. 65; Hayes v. Goode, 7 Leigh [Va.] 496. Estates are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent while the person to whom, or the event upon which they are limited to take effect remains uncertain. Tayloe v. Gould, 10 Barb. [N. Y.] 396." Thornton v. Zea, 22 Tex. Civ. App. 509, 55 S. W. 798.

See, also, 40 Cyc. 1648; Gray, Rule against Perpetuities (2d Ed.) p. 81.

[6] In this connection it should be noted that the law favors the vesting of estates rather than otherwise; that is, if the will when fairly construed leaves the question in doubt, the doubt will be solved in favor of the vesting of the title at the earliest possible moment, so as to avoid a conflict with the rule against perpetuities and to uphold the will. See Underhill. on Wills, vol. 2, § 861; Sumpter v. Carter, 115 Ga. 893, 42 S. E. 324, 60 L. R. A. 274; Henry v. Carr (Ky.) 163 S. W. 756; Commonwealth v. Wellford, 114 Va. 372, 76 S. E. 917; Allison v. Allison, 101 Va. 537, 44 S. E. 904, 63 L. R. A. 920; Gray v. Whittemore, 192 Mass. 367, 78 N. E. 422, 10 L. R. A. (N. S.) 1143, 116 Am. St. Rep. 246.

[7] It should also be noted in the beginning that in determining whether the title vests, the intent—the desire or purpose—of the testator as manifested by the will as a whole must control. As said by the Supreme Court of Illinois, in Pearson v. Hanson, 230 Ill. 610, 82 N. E. 813:

"The legally expressed intention of the testator as found within the four corners of the will must be the chart and guide of the court. That this great fundamental rule may prevail .and the property of the testator take the posthumous course intended by the owner other rules are made and unmade."

With the foregoing rules in mind, let us examine with care the will of Neil P. Anderson, determine his purpose as best we may, and see if his last will and testament can be upheld. If, conformably to established principles of law, it can be upheld, it ought to be done, for the property devised and disposed of was accumulated as the result of his own energy and business capacity, and under our statute he had the right to do with it as he pleased, with such limitations only as are prescribed by law. Revised Statutes 1911, art. 7856.

[8] It seems very clear that by the terms of the will full title to the devised property devolved upon the named executors, subject alone to the specified conditions and trusts, and that such title continued until the death of Mrs. Anderson at least, when by item 5 of the will one-fourth of the estate was made to wholly vest in the son, Bernie L. Anderson. The language of said item 5 in this respect is: "I hereby devise and bequeath all of the estate, right, title and interest." And by item 4 the executors were given full power to "manage, control, and dispose" of all the devised property (except the homestead disposed of in item 2) during the lifetime of the wife; thus, so far as terms of conveyance can be made to do so, investing the executors with both the legal and beneficial estate in the property, and clothing them with the powers ordinarily made the test of absolute ownership. The only limitation annexed was that during Mrs. Anderson's lifetime the executors should pay over to her "such portions of the rents, revenues, interest and income" arising from the property as they might deem proper. This provision as to the payment of income cannot, we think, be given the effect of vesting in Mrs.

Anderson title of any kind to the corpus or body of the estate. It certainly does not purport to do so, and such cannot be said to be the legal effect of the terms. There are numerous authorities cited in behalf of appellants, to the effect that a grant or bequest of the entire income will carry with it by implication the beneficial interests in the property from which the income arises. Thus in Gidley v. Lovenberg, 35 Tex. Civ. App. 209, 79 S. W. 835, the court say:

"That an absolute devise of the entire rents of a named property will carry the property also seems to be well settled, and the reason of the rule is obvious. Such a use necessarily includes the corpus."

See, also, Underhill on Wills, vol. 2, p. 949; Cropley v. Cooper, 86 U. S. (19 Wall.) 174, 22 L. Ed. 113. But we think it will be found that in most cases, at least, where such implication was indulged there was an absolute gift of the income and no clear purpose of opposite effect otherwise manifested in the deed or will granting the income. Thus Mr. Underhill in his work on the Law of Wills (volume 2, § 692, p. 950) says:

"But the rule that a gift of the interest of the fund or of the income of the land is a gift of the fund or of the land itself is only applicable if the testator has not expressly or by implication disposed of the corpus in some other way. The presumption that he intended the legatee of the income to take the corpus, by giving him the interest, is not conclusive, and may be rebutted by evidence appearing on the will. Thus if the testator, after giving the income or issues and profits of land to one for life, provides that, on his death, it shall go to others, or if, giving the income in fee, he devises it over on the contingency of the death of the devisee without issue, the presumption is overcome."

Again, to illustrate, in De Haven v. Sherman, 131 Ill. 115, 22 N. E. 711, 6 L. R. A. 745, it was said by the Supreme Court of Illinois:

"It is thus, as we think, made clearly to appear from the authorities that the devise of a yearly sum, to be paid by a trustee to whom lands are devised, upon uses and out of the net rents that may accrue from the lands in his possession, and which sum is contingent upon the exigencies of the trust, is in no sense a devise of rents issuing out of such lands, but is in the nature of an annuity. And hence it follows, as it seems to us, that the legatee neither took nor acquired any interest in the particular real estate."

See, also, to the same effect; Iasigi v. Shaw, 167 Mass. 328, 45 N. E. 627; Bartlett v. Sears, 81 Conn. 34, 70 Atl. 33; Meek v. Briggs, 87 Iowa, 610, 54 N. W. 456, 43 Am. St. Rep. 410.

In item 4 of the will under consideration the grant of income to Mrs. Anderson is made wholly contingent. It is made subject entirely to the will and direction of the executors. The language of the will goes no further than that the executors shall pay such "portion" (either all or less as the circumstances may require) as they may "deem proper." There is no restriction whatever expressed. It is reasonably clear, not only from the terms used, but from other portions of the will, that the testator intended it to be so. He evidently contemplated and expressly provided for accumulations, inferentially, of income, for he directed a disposition of accumulations upon the termination of the trusts. Such direction is inconsistent with the purpose to give a vested right in Mrs. Anderson, capable of inheritance or alienation, to the entire revenues or to any definite part thereof. He evidently contemplated that Mrs. Anderson might, as the record shows she afterwards did, refuse to accept under the will and take an unfettered right to her one-half or community interest in the devised property. The property was large and susceptible of yielding a large income, and it is a reasonable inference that in such contingency the testator intended that his executors, in whose business ability, personal integrity, and fidelity he reposed confidence, should have power, in their discretion, to devote the income not needed for the support of the wife and mother to the accumulation fund of the estate in contemplation, at the same time carefully providing for the possible contingency of the wife's circumstances becoming necessitous, whether she accepted under the will or not. It seems to us that, exclusive of the homestead, the right acquired by the wife under the terms of the will is in its essence a right merely to compel the executors to give to her during life such part or all of the net income of the devised property as may be reasonably necessary to comfortably maintain her in her station in life. A refusal to do this would be regarded by a court of equity as an abuse of the discretion lodged in the executors, and would no doubt be compelled. Beyond this, however, save to protect the estate from waste, we know of no case going.

We, therefore, think that the testator, Neil P. Anderson, certainly intended that all title, both legal and equitable, in the corpus of the devised estate should be vested in his executors during the life of his wife, and that, until her death at least, no part of the same should vest in any one or more of the beneficiaries named. Such being the intent, such must be the declared effect of the will.

As before stated, it is plain that upon the death of Mrs. Anderson one-fourth of the devised property is made to descend to and invest in the son, Bernie L. Anderson, which, therefore, is well within the time required by the rule against perpetuities for the vesting of estates. But what must be said of the status of the title of the other three-fourths between the death of Mrs. Anderson and the 30-year period at which the executors are directed to pay such three-fourths with its accumulations, if any? In other words, can it be said that during this intervening period any title in and to the corpus of the devised property became vested or fixed in any one or more of the daughters, or of the issue of a daughter or daughters, of Neil P. Anderson?

[9] Much that we have said in defining the right of Mrs. Anderson is applicable, we think, to the case of the daughters. Though it should perhaps be stated in this connection, without a discussion of the often difficult distinctions to be made between vested and contingent remainders, that if the will conferred a vested or fixed right in a daughter, or in the issue of a daughter, in the corpus of the estate, if for but a moment, immediately upon the death of Neil P. Anderson, or his wife, then it is immaterial that the right so vested was subject to be defeated by the contingency of the death of the person in whom the right was so devolved before the expiration of the 30-year period. See Laval v. Staffel, 64 Tex. 370; Chace v. Gregg, 88 Tex. 558, 32 S. W. 520; Haring v. Shelton, 103 Tex. 10, 122 S. W. 13; St. Paul's Sanitarium v. Freeman, 102 Tex. 376, 117 S. W. 425, 132 Am. St. Rep. 886.

[10] Now let us address ourselves with more particularity to the question of vested title vel non in Mr. Anderson's daughters. We have already shown, we think, that until the death of Mrs. Anderson the entire title is by the terms of the will vested in the executors. During this period, neither by the terms of the will, nor by implication from a gift of the income, is any certain vested right conferred, unless perhaps a right to maintain an action to restrain future waste, which may be exercised by a purely contingent remainderman. 40 Cyc. 52. Nor in this respect do we think any satisfactory distinction can be made as to the status of title or right in the daughters during the period before or after the death of Mrs. Anderson until the expiration of the 30-year period. On the death of the wife, as will be seen by an examination of item 5 of the will, the title to the estate intended to ultimately go to the daughters is again expressly vested in the executors. As to this the testator reiterates and thus emphasizes the terms of the original conveyance to them. He there says in the event named, the estate ultimately intended for the daughters "shall pass to and vest in" his executors, subject only to the "conditions" and the "trusts" provided in the will. The only conditions to be found in the will are that upon the death of a daughter without issue an aliquot part of the property should immediately pass to the son, and that the remainder, continued under the trust as before, shall be conveyed at the end of the 30 years from the date of his death. The "trusts" committed to the trustees are to manage and control the property, and within their discretion to pay income, as in the will provided. As in the case of the wife, no fixed portion of income beyond the control and discretion of the executors is given to any daughter or to the issue of any daughter. Nor is there anything appearing from the face of the will, or in the agreed facts in this case, that indicates that at the time the will was prepared, or at the time of the testator's death, either daughter was in any immediate need, or that she would probably become so, thus favoring a desire of the testator that is manifested by the will as a whole to increase his estate as far as circumstances would permit by adding thereto income not necessary for the maintenance of his wife and daughters, the daughters or their issue to receive the full benefit of the augmented property at the end of the 30-year period. The mere grant or gift of income to the daughters limited as to times and amounts to the discretion of the executors, falls short, in our judgment, under the authorities to a definite investiture of any fixed right in præsenti to the corpus of the estate. See Leake v. Robinson, 2 Mer. 363, 35 English Reprint, 979; Farrell v. Cogley, 146 S. W. 315; Lewisohn v. Henry, 179 N. Y. 352, 72 N. E. 239; Reid v. Voorhees, 216 Ill. 236, 74 N. E. 804, 3 Ann. Cas. 946; Iasigi v. Shaw, 167 Mass. 328, 45 N. E. 627; Bartlett v. Sears, 81 Conn. 34, 70 Atl. 33; De Haven v. Sherman, 131 Ill. 115, 22 N. E. 711, 6 L. R. A. 745; Keyser v. Mitchell, 67 Pa. 473; Meek v. Briggs, 87 Iowa, 610, 54 N. W. 456, 43 Am. St. Rep. 410; In re Kountz's Est., 213 Pa. 399, 62 Atl. 1103, 3 L. R. A. (N. S.) 639, 5 Ann. Cas. 427; Morrison v. Schorr, 197 Ill. 554, 64 N. E. 545; Frantz v. Race, 205 Pa. 150, 54 Atl. 714; 2 Underhill on Wills, p. 950, § 692; 2 Underhill on Wills, § 872, p. 1325; 1 Perry on Trusts, § 386a.

Nor can there be found in all the will any word of gift, grant, or conveyance, legally apt or in common use for the passing of a present interest to the daughters, notwithstanding that the will manifests the testator's knowledge of such terms and of their appropriate office. For item 5 the testator directs that upon the death of his wife one-fourth of his estate "shall pass to and become the property of my son Bernie L. Anderson." In the same connection and in evident opposition he directs that the remaining three-fourths "shall pass to and be vested in" his executors, thus unmistakably manifesting a purpose to hold the full title of the daughters in abeyance until the appointed time for distribution. Of like import are the terms of conveyance in item 7. The testator there directs that "at the expiration of thirty years" his executors "shall pay over and convey" to the daughters the estate and its accumulations. At no time are the words "vest" or "vested" used with reference to either of his daughters or their issue, but in each and every instance where they are referred to words of futurity are used, and in no instance is there any language from which it is to be implied that the descendants of the daughters were to have any character of vested interest in the corpus of the property until the end of the 30 years, when the testator in explicit and certain terms directed that the estate and its accumulations should be paid over and conveyed. In brief, it seems

to us that the will clearly shows that the testator not only knew what he wanted, and the effect of terms to accomplish his desires, but also willed that the beneficial interest in his estate intended for the daughters should not become their very own until the expiration of the 30 years, this postponement of right being doubtless for the supposed benefit of the daughters and arising from some real or fancied want of need other than as provided, or some real or fancied want of capacity in the daughters to prudently manage large properties.

[11] From the foregoing conclusions we can but hold that, regardless of any distinction between real and personal property, the estate intended for Mr. Anderson's daughters did not, under the terms of his will, pass to them upon his death nor at any time thereafter. Nor will it so pass until the expiration of the 30 years named in the will. If this be true, then the able counsel for appellants admits with commendable frankness that the provisions of the will relating to the daughters are invalid under the rule against perpetuities. Under the authorities from which we have heretofore quoted, it can readily be seen, aside from counsel's admission, that if we indulge, as it seems it is our duty to do, the supposition of the possible death of the wife, daughters, and grandchildren of Neil P. Anderson within a year or two after his decease, the will as to the interest intended for the daughters by its terms would prevent alienation and disposition to a period beyond lives in being and 21 years thereafter. But in this event it is insisted that we should reject the invalid portions of the will and enlarge the estates of the daughters to indefeasible equitable fees, subject to the control of the trustees during the daughters' lives within the 30 years, and thus leave effective the trusts intended to benefit the wife and the vested remainder at her death to the son.

But we are of opinion that this insistence cannot be upheld. It seems evident that Mr. Anderson undertook to dispose of his entire estate in accord with a general plan that comprehended, not only the wife and son, but also the daughters. There is nothing in the will nor in the facts that indicates that he would have made his will as he did with the provisions relating to the daughters eliminated. It cannot be said, as we have seen, that the will confers on Mrs. Anderson any fixed right to the income for life, nor under the discretion given to the executors can it be said that she will in fact ever need or receive any part of such income. As to the son, with the invalid portions rejected, his portion of the estate is merely postponed until his mother's death. It cannot be said that this is either desirable or beneficial to the son, in view of the fact that under our statute of descent and distribution he would, in the absence of a devise, be entitled to the same portion immediately. The will reasonably indicates that the burden of the testator's care was for his daughters. The testator had knowledge of the wife's community right and full faith in his son's business ability, as is manifested by his appointment as executor, and the daughters, as indicated, were the more probable objects of his solicitude. And in considering the whole we find nothing in the will nor in the evidence indicating that Neil P. Anderson would have written his will to provide alone for the wife and son. We think the case well within that line of authorities which hold that where parts of a will are void, the whole will be set aside, if to sustain the other parts would work an injustice or violate the general scheme or plan of the testator. See Barrett v. Barrett, 255 Ill. 332, 99 N. E. 625; Reid v. Voorhees, 216 Ill. 236, 74 N. E. 804, 3 Ann. Cas. 946; Kountz's Estate, 213 Pa. 390, 62 Atl. 1103, 3 L. R. A. (N. S.) 639, 5 Ann. Cas. 427; Lawrence v. Smith, 163 Ill. 149, 45 N. E. 259; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; In re Fair's Estate, 132 Cal. 523, 60 Pac. 442, 64 Pac. 1000, 84 Am. St. Rep. 70; Shepperd v. Fisher, 206 Mo. 208, 103 S. W. 998; Johnson v. Preston, 226 Ill. 447, 80 N. E. 1001, 10 L. R. A. (N. S.) 564; Gully v. Neville (Miss.) 55 South. 289; Eldred v. Meek, 183 Ill. 26, 55 N. E. 536, 75 Am. St. Rep. 86; Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989; Brown v. Quintard, 177 N. Y. 75, 69 N. E. 225.

We conclude that the will of Neil P. Anderson is void as a whole, on the ground that it violates the rule against perpetuities. The judgment below, therefore, so declaring must, in all things, be affirmed.

---

 For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes